**36 So.2d 714**

**STACY et al. v. MIDSTATES OIL CORPORATION et al.**

**No. 38315.**

Dec. 15, 1947.

On Rehearing July 2, 1948.

Cook, Clark & Egan, of Shreveport, for Midstates Oil Corp. and others.

C. F. Currier and J. P. D'Artois, both of Shreveport, for Ohio Oil Co.

Foster, Hall & Smith & Herold, Cousin & Herold, all of Shreveport, for plaintiffs-appellees.

O'NIELL, Chief Justice.

The plaintiffs have a mineral lease, dated February 24, 1942, on 50 acres of land, consisting of the SE¼ of NE¼ and the S 10 acres of the NE¼ of NE¼ of Section 21, T. 23 N. R. 8 W. They are suing to have the lease recognized as a valid and subsisting lease. The validity of the lease depends upon whether a former lease, granted by the landowner, R. P. Bond, to James E. Smitherman, on February 14, 1919, and covering the 320 acres consisting of the SW¼ of SW¼ of Section 15, W½ of SE¼ and E½ of SW¼ and S½ of NE¼ and NE¼ of NE¼ of Section 21, T. 23 N. R. 8 W., has expired by its terms, for want of production in paying quantities, so far as the lease embraced the 200 acres forming the NE¼ of NE¼ and S½ of NE¼ and W½ of SE¼ of Section 21, which 200 acres of course includes the 50 acres on which the plaintiffs acquired their lease from the landowner on February 24, 1942. The defendants, respectively, hold leases, either directly or by assignment, on the several parts of the 320 acres covered by the original lease dated February 14, 1919.

The defendants met the suit with an exception of no cause or right of action, the exception being founded upon the failure of the plaintiffs to allege either that there was no production of oil or gas in paying quantities from the remaining 120 acres composing the SW¼ of SW¼ of Section 15 and E½ of SW¼ of Section 21,

or that the lease had become divided so that production of oil or gas from the 120 acres would not keep the lease in force as to the 200 acres embracing the 50 acres on which the plaintiffs acquired their lease; and the exceptors contended that the original lease of the 320 acres was essentially indivisible. In that connection the plaintiffs did allege in their petition that Smitherman assigned his lease to The Ohio Oil Company on September 10, 1930, so far as the lease covered the 200 acres composed of the S½ of NE¼ and NE¼ of NE¼ and W½ of SE¼ of Section 21. The alleged assignment is attached to and made part of the plaintiffs' petition, and under a well-settled rule of pleading it must control the question whether it constitutes an assignment such as to effect a separation of the lease on the 200 acres from the lease on the remaining 120 acres, or whether it was only a sublease of the 200 acres, which would not constitute such a division of the original lease on the whole 320 acres. After hearing arguments on the exception the judge overruled it. The defendants, reserving the benefit of the exception, answered the petition, and before and during the trial objected to the introduction of any and all evidence on the ground that the petition did not disclose a cause or right of action. The judge overruled the objection and after hearing the case on its merits gave judgment for the plaintiffs, declaring their lease on the 50 acres to be a valid and subsisting lease. The defendants have appealed from the decision.

The question whether the ruling on the exception of no cause of action was right or wrong depends upon whether the instrument dated September 10, 1930, did or did not effect a division of the original lease on the 320 acres. The defendants argue that the ruling is wrong on the ground that the instrument which the plaintiffs rely upon as effecting a division of the lease is only a sublease of the 200 acres, and not an assignment. The plaintiffs, on the other hand, argue that the ruling is correct on the ground that the instrument on which they rely as effecting a division of the lease is in reality an assignment and not a sublease. The defendants base their argument, that the instrument constitutes a sublease, on the fact that Smitherman, by the terms of the instrument, reserved unto himself an overriding royalty of $\frac{1}{32}$ of the proceeds of all oil that might be thereafter produced from the 200 acres of land from a depth exceeding 3,000 feet below the surface. The plaintiffs, on the other hand, base their argument, that the instrument constitutes an assignment of the lease in so far as it affects the 200 acres, upon the declaration in the instrument that Smitherman surrendered to The Ohio Oil Company all control over the lease on the 200 acres and expressly vested in The Ohio Oil Company the exclusive right either to preserve or to forfeit the lease so far as it covered the 200 acres. That clause in the instrument reads as follows:

"Development of and operations on the premises, if any, and the extent and character thereof, as well as the preservation or forfeiture of the leasehold, shall be solely at the will of said The Ohio Oil Company or its successors or assigns, and, upon termination of the leases covering the lands above described, for any cause whatsoever, there shall be no further liability hereunder."

If, in a transfer of a lease on only a part of the leased premises, by the original lessee, he retains any of his rights on that part of the leased premises under the original lease, the transaction is a sublease, as distinguished from an assignment; but, if, in such a transaction, the original lessee transfers all of his interest in the lease so far as the land covered by the transfer is concerned, the transaction is not a sublease but an assignment of the lease, to that extent. The reason for that distinction is that, in the case of a sublease of a part of the leased land, the original lessee does not rid himself of all interest in and authority over the land subleased; whereas, if there is no such reservation on the part of the original lessee, his assignee acquires complete control over that part of the lease which is assigned. Smith v. Sun Oil Co., 165 La. 907, 116 So. 379; Johnson v. Moody, 168 La. 799, 123 So. 330; Swope v. Holmes, 169 La. 17, 124 So. 131; Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264.

■ In the present case it is declared, unqualifiedly, in the instrument by which the lease on the 200 acres was transferred to The Ohio Oil Company, that thenceforth the company should have complete control over the lease on the 200 acres, and should have the exclusive right either to preserve or to forfeit the lease so far as it covered the 200 acres. Hence in this case the transfer of the lease on the 200 acres to The Ohio Oil Company must be characterized as an assignment, notwithstanding the reservation of the $\frac{1}{32}$ overriding royalty on any oil that might be produced from a depth exceeding 3,000 feet below the surface. The controlling feature of the transaction, in determining that it was an assignment, and not a sublease, is that it gave to the transferee, The Ohio Oil Company, the exclusive right to forfeit the lease on the 200 acres to the original lessor at any time.

On April 23, 1921, Smitherman made what is conceded to have been a sublease, to The Ohio Oil Company, of the 200 acres described in the contract dated September 10, 1930. At the same time The Ohio Oil Company gave to Smitherman a counter letter, which was never recorded, and which reads as follows:

"Shreveport, La., April 23, 1921
Mr. J. E. Smitherman,
Shreveport, Louisiana.

Dear Sir:

"With reference to the act of assignment executed this day by you unto The Ohio Oil Company transferring and conveying unto said company one hundred twenty-eight oil, gas and mineral leases covering and affecting lands situated in Claiborne Parish, Louisiana, in Twp. 22 North, Ranges 7 and 8 West, and in Twp. 23 North, Ranges 6, 7 and 8 West, this writing is addressed to you for the purpose of expressing the agreement of this company that if at any time hereafter we shall elect to release, surrender or cancel all or any part of any one or all of said leases then before effecting such release or cancellation such lease or leases or part or parts thereof will be first offered to you, and if you shall request it, same will be re-assigned or reconveyed to you by this company instead of being released or surrendered direct to the lessors.

Yours very truly,
The Ohio Oil Company
By: J. K. Kerr. Vice President."

■ It is argued in the defendants' brief that this counter letter had the effect of nullifying the stipulation in the transfer dated September 10, 1930, that the right to forfeit the leasehold on the 200 acres should be solely that of The Ohio Oil Company. The argument is destroyed by the fact that the counter letter refers expressly and only to the sublease dated April 23, 1921. Even if the counter letter could have reference to the subsequent assignment, dated September 10, 1930, it could not have effect against third parties, such as the plaintiffs in this case, because it was not recorded. Rev.Civ.Code, art.

2239. It is sufficient to say, however, that no such counter letter was given in connection with the contract dated September 10, 1930.

■ The defendants contend that a division of the lease was not legally possible because mineral leases are, essentially, indivisible. It has been held that the mutual or reciprocal obligations incurred by the parties to a mineral lease are indivisible. Murray v. Barnhart, 117 La. 1023, 42 So. 489; Cochran v. Gulf Refining Co., 139 La. 1010, 72 So. 718; Nabors v. Producers' Oil Co., 140 La. 985, 74 So. 527, L.R.A.1917D, 1115. But a mineral lease can be made divisible into separate leases on separate parts of the land covered by it by agreement of the parties to the lease. Smith v. Sun Oil Co., 165 La. 907, 116 So. 379; Swope v. Holmes, 169 La. 17, 124 So. 131; Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264. Hence there is no apparent reason why a mineral lease cannot be so divided into separate leases by the original lessee, provided the rights of the lessor are not thereby prejudiced. There is nothing in the record to show any such prejudice to the rights of the lessor in this case.

The next question is whether there has been in fact a cessation of production in paying quantities from the 200-acre tract. The only evidence in the record on the subject is the record of production from the 200 acres for 1940, 1941, and the first half of 1942. The record lists production of oil

in 1940 as 1287 barrels; 1941, 1171 barrels; and the first half of 1942, 366 barrels. The production, therefore, may be expressed in barrels per acre per day as follows: 1940, $\frac{1}{67}$; 1941, $\frac{1}{62}$; and the first half of 1942, $\frac{1}{100}$. In the case of Logan v. Tholl Oil Co., 189 La. 645, 180 So. 473, a production of $\frac{1}{120}$ of a barrel per acre per day was held not to be production in paying quantities. In Caldwell v. Alton Oil Co., 161 La. 139, 108 So. 314, a production of $\frac{1}{66}$ of a barrel per acre per day was held not to be production in paying quantities. In Brown v. Sugar Creek Syndicate, 195 La. 865, 866, 197 So. 583, a production of $\frac{1}{18}$ of a barrel per acre per day was held to be production in paying quantities. However, a comparison of the production in the present case with the production in the cases cited is not a satisfactory comparison, for two reasons. The first is that there is no showing that the value of oil in the years 1940, 1941, and 1942 was the same as at the time of the production in the cases cited. The second reason is that the decisions in the cases cited were not based upon production by barrels per acre per day. The basis for the decisions in those cases was a comparison of the lessor's royalty with the original consideration for the lease, or with the delay rentals stipulated during the primary term of the lease. In fact, in Brown v. Sugar Creek Syndicate, it was stated that the decision was based upon the finding that the lessee was making a fair and reasonable profit, considering the operating costs and the revenue. Therefore

we are unable to make an intelligent decision on this point without having the benefit of evidence as to the value of the oil produced from the 200 acres during 1940 and 1941, and in the first half of 1942. We have concluded, therefore, that this case must be remanded to the district court for the purpose of receiving further evidence on this subject.

The plaintiffs contend that The Ohio Oil Company surrendered or abandoned the original lease from Bond to Smitherman, as to the 200-acre tract, by taking in 1937, top leases from all the land owners and owners of mineral rights as to that tract, except Mrs. Fannie Williamson Bond. The multiple original top leases are attached to a stipulation of facts in connection with an exception of non-joinder of parties defendant filed by the defendants. Each of the multiple originals covers the entire 200-acre tract, and each contains the following paragraph:

"21. This lease shall supersede the present oil and gas leasehold contracts of The Ohio Oil Company affecting the above described lands * * *".

That is the only evidence that was introduced to show abandonment of the lease as to the 200 acres by The Ohio Oil Company. We do not consider this recital in the top leases sufficient, of itself, to support a finding that The Ohio Oil Company intended to abandon, or did in fact abandon, the lease from Bond to Smitherman insofar as it affected the 200-acre tract. Nor do we consider the taking of the top leases as being entirely inconsistent with the continued existence of the original lease. It is a matter of common knowledge that lessees often take top leases when they are doubtful about the validity of a former lease, without intending to impeach the title of a former lessor, or to surrender their rights under any former lease which may turn out to be valid.

The record discloses that, before the plaintiffs, appellees, acquired their lease from Mrs. Fannie W. Bond of date February 24, 1942, she sold to S. J. Beene a one-acre mineral interest in the 40 acres described as SE¼ of NE¼ of Section 21, and that The Ohio Oil Company took a top lease from Beene on this 1 acre mineral interest, as the company had done with regard to all other owners of mineral interests in the property involved, except Mrs. Bond. Accordingly, it is conceded by the plaintiffs, appellees, that the judgment appealed from, if affirmed, should be amended so as to cover only 4⅘₀ of the mineral rights in that 40-acre tract. As we have found it necessary to remand the case the district judge will have an opportunity to make this correction.

The record discloses also that on December 9, 1924, R. P. Bond, who then owned all of the 320-acre tract covered by the original lease, transferred the land to his five children, namely, J. L. Bond, husband of Mrs. Fannie W. Bond, J. N. Bond, Mrs. Bertha Bond Kirkpatrick, R.

E. Bond and Mrs. Lucy Ray Sanders. On May 8, 1928, the five co-owners partitioned the land, and in the partition the 50 acres involved in this suit fell to J. L. Bond, husband of Mrs. Fannie W. Bond, who afterwards acquired the 50 acres. R. P. Bond had transferred mineral interests throughout the 320-acre tract and in consequence there was a lack of uniformity in the mineral interest which he owned in the several parts of the 320 acres. Subsequent to the partition the five co-owners entered into an agreement which was expressed in a letter addressed to The Ohio Oil Company in which they declared that they authorized the company to continue the method of distribution of the royalties due to each of them in the way in which it had been distributed theretofore, because the act of partition which they had made was made for the sole and only purpose of partitioning the surface of the land, it being their intention not to divide the royalty interests. The result of that agreement or mutual declaration on the part of the five joint owners of the 320 acres is that there is now a dispute between the plaintiffs and the defendants in this case as to whether Mrs. Fannie W. Bond owned at the time when she made the lease to the plaintiffs, on February 24, 1942, all of the mineral rights which R. P. Bond had owned in the 50-acre tract, or owned only 1/5 of the mineral interest which he had owned. Since we have concluded to remand the case to the district court for a hearing of further evidence, we find it unnecessary to decide at this time the question as to whether Mrs. Fannie W. Bond's interest was all that R. P. Bond had owned or was only 1/5 of the interest which he had owned in the 50-acre tract.

The judgment appealed from is affirmed in so far as it recognizes that the plaintiffs' petition discloses a cause of action, but is set aside in all other respects, and the case is ordered remanded to the district court to receive further evidence on the question whether the lease on the 200-acre tract, described as S½ of NE¼ and NE¼ of NE¼ and W½ of SE¼ of Section 21, has expired for want of production of oil in paying quantities, and to receive further evidence on the question whether The Ohio Oil Company, by taking top leases from all of the holders of mineral interests except Mrs. Bond, in 1937, thereby abandoned all rights of the company under the original lease from R .P. Bond to James E. Smitherman, dated February 14, 1919; and for such further proceedings as may be consistent with our opinion in this case. All costs of this proceeding shall abide the final disposition of the case.

BOND, J., absent.

### On Rehearing

MOISE, Justice.

This is a suit instituted by R. A. Stacy of Caddo Parish, La., and Moses Ascher

of New York City, N. Y., in which they seek to have themselves recognized as owners, under an oil and gas lease executed in their favor by Mrs. Fannie W. Bond on February 24, 1942, of a valid mineral lease affecting the SE¼ of the NE¼ and the South 10 acres of the NE¼ of the NE¼ of Section 21, T. 23 N., R. 8 W., Claiborne Parish, Louisiana, and as such entitled to recover their proportionate share of the oil now being produced from this property; claiming that a prior existing lease covering 320 acres had expired by its terms as to 200 acres, of which the above 50 acres form a part, because of lack of production in paying quantities for several years prior to the date of plaintiffs' lease from Mrs. Bond. Parties defendant are (1) James E. Smitherman (the original owner of the prior existing lease and the claimant of an overriding royalty through that lease); (2) the Midstates Oil Corporation (the company which had successfully drilled a well, subsequent to plaintiffs' acquisition of their lease from Mrs. Bond, on a portion of the property covered by the Smitherman lease); (3) the Ohio Oil Company and T. L. James & Co. Inc. (which also claim overriding royalties under the lease held by Midstates); and (4) certain other mineral claimants who need not be enumerated since they are not necessary to a decision. The case comes before us on an appeal taken by the above named defendants from a judgment overruling the exceptions of no cause and no

right of action, and a judgment in plaintiffs' favor on the merits, as prayed for.

The defendants re-urge the foregoing exceptions, claiming now that the district court improperly overruled them.

■ It is a rule of law that, for the purpose of considering the exceptions of no cause and no right of action, all of the well-pleaded facts in the petition, as well as the documents made a part thereof, must be accepted as true.

From the allegations of plaintiffs' petition and the annexed documents, it appears that on February 24, 1942, the plaintiffs acquired a lease from Mrs. Fannie W. Bond covering the 50 acres above described, she having acquired the title to this property by purchase from R. P. Bond in 1933. Prior thereto, in February of 1919, Bond had given a lease covering 320 acres of land (including this 50 acres) to James E. Smitherman. In this lease was contained the stipulation that the lease would remain in effect after the primary term so long as production was continued in paying quantities. The right to develop the E½ of the NE¼ of Sec. 21, included in the original 320 acre lease to Smitherman (of which the 50 acres in controversy form a part) was acquired by the Midstates Oil Corporation. Subsequent to the date of plaintiffs' lease, this company commenced and successfully completed a producing well in paying quantities on this acreage. It also appears that in the various

transfers of the original lease insofar as it affects the E½ of the NE¼, Smitherman, the Ohio Oil Company, and T. L. James & Co., Inc., retained overriding royalties. Plaintiffs claim that the lease from Bond to Smitherman, insofar as it affected 200 acres (including the E½ of the NE¼ of Sec. 21 operated by Midstates) had expired by reason of no production thereon in paying quantities for several years prior to acquisition of plaintiffs' lease, a fact that the then owner of the lease (the Ohio Oil Company) recognized by taking top leases from all of the mineral owners excepting Mrs. Bond.

The basis for the exceptions of no cause and no right of action lies in defendants' contention that the plaintiffs predicated the validity of their lease upon the alleged nullity of a *portion* of an indivisible prior existing lease embracing a larger area because of failure of production on this portion in paying quantities, without having alleged the failure or lack of production on the remaining acreage.

Plaintiffs in their argument, both orally and in brief, apparently concede that the lease is indivisible, but contend that such a lease is subject to division by the consent of all parties, and that by their subsequent actions, all parties concerned have consented to such division and the lease has in effect been divided.

■ An examination of the petition and documents attached thereto fails to disclose any allegation that would support the plaintiffs' contention. The documents upon which their argument is based were not a part of the petition but instead were introduced in evidence after the defendants' objection to any and all evidence on the merits of the case had been made general by the trial judge. Consequently this contention cannot be considered in disposing of these exceptions.

■ We believe, therefore, that the exceptions were well founded and should have been maintained.

For the reasons assigned, the judgment of the district court is annulled and set aside; and it is now ordered, adjudged and decreed that the exceptions of no cause and no right of action be maintained and plaintiffs' suit dismissed at their cost. The right to apply for a rehearing is reserved to the plaintiffs.

O'NIELL, Chief Justice (dissenting from the opinion and decree on rehearing).

I adhere to my opinion that the plaintiffs' petition, together with the documents attached thereto and made a part thereof, did state a cause of action. In their petition the plaintiffs alleged that they held a mineral lease on certain described land which had been subject to a previous lease covering a larger area, part of which area (including the area affected by the plaintiffs' lease) was the subject of an assignment by the original lessee, J. E. Smitherman, and the Ohio Oil Company, dated September 10, 1930, a certified copy of

which assignment was attached to and made part of the plaintiffs' petition. They alleged that there had not been any production, in paying quantities, for the past several years, on the area included in the assignment of September 10, 1930, and that therefore the portion of the original lease which was the subject of the assignment had lapsed according to its own terms.

As I pointed out in the opinion which I wrote for the court on the original hearing of this case, by the terms of the agreement of September 10, 1930, the original lessee, J. E. Smitherman, relinquished all control over the original lease so far as it affected the area described in that agreement. The agreement therefore constituted an assignment of part of the original lease; and, since the record did not disclose that the transaction affected adversely the interests of the original lessor, the transaction constituted a division of the lease. So that, if, as the plaintiffs alleged, there was no production in paying quantities on that portion of the original lease which was assigned, the lease on that portion of the land would have lapsed and the plaintiffs as holders of the subsequent lease would be entitled to their rights under that lease.

It is stated in the opinion on rehearing that an examination of the plaintiffs' petition and of the documents attached thereto fails to disclose any allegation that would support the plaintiffs' contention that all parties to the original lease consented, subsequent to the assignment dated September 10, 1930, to the division of the lease. It is stated also in the opinion on rehearing that the documents on which the plaintiffs' argument is based were not a part of the petition but instead were introduced in evidence after the defendants' objection to any and all evidence on the merits of the case had been made general by the trial judge. It is plain, however, that our decision rendered originally in this case, maintaining that the plaintiffs' petition, together with the documents annexed thereto and made part thereof, did disclose a cause of action, was not based in any way upon any document that was not annexed to and made part of the plaintiffs' petition.

For these reasons, together with those stated in our original opinion, I respectfully dissent from the opinion and decree on rehearing reversing our decision on the exception of no cause of action.

McCALEB, Justice (concurring in part and dissenting in part).

I am in accord with the ruling that plaintiffs' petition does not state a cause of action since they have failed to aver that the lease, indivisible unilaterally, has been actually divided by consent of all of

the parties. However, the maintenance of the exception does not, in my opinion, authorize the absolute dismissal of the suit, for as stated in our recent decision in Bates v. Prudential Insurance Company of America, 192 La. 1029, 190 So. 120, 122:

"It is well established that an exception of no cause of action based upon an insufficiency of allegations in the petition is really an exception of vagueness, and although it is meritorious and sustained, the plaintiff would still be entitled to amend the petition to supply the want of allegations of fact. Brunson v. Mutual Life Insurance Company of New York, 189 La. 743, 180 So. 506; Reeves v. Globe Indemnity Co. of New York, 185 La. 42, 168 So. 488; McCoy v. Arkansas Natural Gas Company, 184 La. 101, 165 So. 632; Lejeune v. Lejeune et al., 184 La. 837, 839, 167 So. 747; Davis v. Arkansas Southern Railway Company, 117 La. 320, 41 So. 587".

Thus, in the instant case, if the plaintiffs are able to allege that the lease, though originally indivisible, has been in fact divided by and with the consent of all parties, they should be permitted to supplement their pleadings and not suffer a summary ejectment of their action.

·For these reasons, I respectfully dissent from that part of the decree which dismisses plaintiffs' suit.