**53 So.2d 149**

**BOND et al. v. MIDSTATES OIL CORP. et al.**

**No. 39693.**

April 23, 1951.

Rehearing Denied May 28, 1951.

C. F. Currier, J. P. D'Artois and O. L. Hasty, all of Shreveport, for Ohio Oil Co.

Cook, Clark & Egan, Shreveport, for Midstates Oil Corp., James E. Smitherman and T. L. James & Co., Inc.

Monroe & Lemann, New Orleans, Herold, Cousin & Herold and Smith, Hunter, Risinger & Shuey, all of Shreveport, for plaintiffs and intervenors, appellees.

LE BLANC, Justice.

In the present suit it is alleged on the part of one of the plaintiffs, Mrs. Fannie Williamson Bond, that on February 24, 1942 she was the owner in her own right, as her separate and paraphernal property, of the fee title to the SE¼ of the NE¼ and the South ten acres of the NE¼ of the NE¼ of Section 21, T. 23 N., R. 8 West, Claiborne Parish, and that on that same date she was the owner of $44/50$ of the mineral rights in the said fifty acres of land so described with the right to receive certain royalties accruing from the production of oil. It is alleged that her title and that of all parties made defendant in this action is traced to a common author, R. P. Bond, and that on the said date of February 24, 1942, her interests in the said mineral rights being unencumbered, she executed a mineral lease in favor of R. P. Stacy and Moses Ascher, her coplaintiffs herein, said lease being duly recorded in the Conveyance Records of Claiborne Parish.

It is next alleged that Midstates Oil Corporation, a Delaware corporation domiciled in Tulsa, Oklahoma, with agents in this State, drilled a well on the E½ of the NE¼ of Section 21, T. 23 N., R. 8 West which was completed in the Pettit Zone at a depth of 4000 feet, which well produced oil in large quantities, knowing at the time that plaintiff, Mrs. Fannie Williamson Bond, had executed the mineral lease of February 24, 1942, to Stacy and Ascher on the 50 acre tract owned by her.

It is next alleged that on January 6, 1943, pursuant to regular notice and hearing, the Commissioner of Conservation of the State of Louisiana issued his Integration Order No. 35–21, whereby all leasehold rights and mineral rights throughout the E½ of the NE¼ of Section 21, T. 23 N., R. 8 West were pooled and unitized as to production of oil and gas from the Pettit Zone, from date of first production and although plaintiffs are entitled to share in the production to the extent of their mineral rights and interests, Midstates Oil Corporation which is in physical possession of the producing well has refused to allow them to participate notwithstanding the fact that they (plaintiffs) have at all times been willing to pay and do now tender their proportion of the costs of drilling, equipping and operating said well.

Plaintiffs next allege that the reason Midstates Oil Corporation denies them participation is its claim and assertion that it has a valid mineral lease on the mineral rights claimed by Mrs. Fannie Williamson Bond, by virtue of having acquired, through assignment, that certain mineral lease executed by R. P. Bond in favor of James E. Smitherman on July 14, 1919, insofar as it affected the E½ of the NE¼ of Section 21, T. 23 N., R. 8 West; which lease is recorded in the Conveyance Records of Claiborne Parish.

Plaintiffs aver that the said lease of July 14, 1919 to Smitherman originally covered the SE¼ of SE¼ of Section 15; the W½ of SE¼, the E½ of SW¼, the S½ of NE¼ and the NE¼ of NE¼ of Section 21, T. 23 N., R. 8 West. That area comprises 320 acres. That on April 23, 1921, Smitherman transferred the said lease insofar as it affected 200 acres described as the E½ of NE¼, the SW¼ of NE¼, the W½ of SE¼ Section 21 T. 23 N., R. 8 West, to the Ohio Oil Company, reserving an overriding royalty on production had therefrom, and that at about the same time he subleased the remaining 120 acres to other parties.

Next plaintiffs aver, and this is one of the material allegations of their petition, that on September 10, 1930, by an instrument recorded in the Conveyance Records of Claiborne Parish, Smitherman and Ohio Oil Company "severed, separated and divided the aforesaid R. P. Bond lease insofar as it affected the 200 acres described as the E½ of the NE¼, the SW¼ of the NE¼, the W½ of the SE¼, Section 21, T. 23 N., R. 8 West, from the remaining 120 acres described as the SE¼ of the SE¼ of Section 15 and the E½ of the SW¼ of Section 21, T. 23 N., R. 8 West, Claiborne Parish, Louisiana, which was also included in the original lease, in such manner that thereafter said R. P. Bond lease, insofar as it affected said 200 acres, could be treated with, dealt with, forfeited or maintained without regard to the continued existence or forfeiture of said lease insofar as it affected the remaining 120 acres included in

the original lease." Because Midstates Oil Corporation holds its lease on the E½ of the NE¼ of Section 21, T. 23 N., R. 8 West, by mesne assignments from the Ohio Oil Company plaintiffs aver that it is bound by the action of its author in title in the severance and division alleged to the same extent as though it had itself participated therein.

These allegations are followed by an averment to the effect that if, for any reason it could be maintained that division of the lease could not have become effective without the consent of all parties in interest, all of said parties have so consented by having ratified the division of the original R. P. Bond-J. E. Smitherman lease as evidenced by the execution of a new lease to the Ohio Oil Company by all mineral and royalty owners except Mrs. Fannie Williamson Bond and Mrs. Corinne Norton and Mrs. Nellie Norton, between the years of 1937 and 1942, by releases obtained from Ohio Oil Company as to their interests in the 200 acre tract and by the lease which Mrs. Fannie Williamson Bond granted to Stacy and Ascher.

Further plaintiffs aver that the original Bond-Smitherman lease has long since terminated insofar as it covered the E½ of the NE¼, SW¼ of the NE¼, W½ of SE¼ of Section 21, T. 23 N., R. 8 West, by failure of production in paying quantities.

It appears that Ohio Oil Company had transferred its rights in the lease, insofar as it applied to 80 acres of the 200 acre tract, which 80 acres included 44 acres of the land involved in this suit, to T. L. James & Company and T. L. James and Company later assigned its rights to Midstates Oil Corporation and for that reason it is made a party defendant in the suit.

Plaintiffs pray for judgment recognizing Stacy and Ascher as the owners of a valid and subsisting lease covering Mrs. Fannie Williamson Bond's mineral rights in the 50 acres of which she has the fee title, subject to her overriding royalties thereunder; decreeing that the original R. P. Bond-J. E. Smitherman lease has lapsed and is no longer in effect insofar as the E½ of the NE¼ of Section 21, T. 23 N., R. 8 West is concerned; that plaintiffs be decreed entitled to share in the production from said land to the extent of Mrs. Bond's mineral interest therein since the first production by Midstates Oil Corporation, subject to the obligation of reimbursing a proportionate share of the drilling costs and that Midstates Oil Corporation be held liable to an accounting to them by virtue of the Integration Order of the Conservation Commission and the quasi contractual obligation imposed by law.

Defendants filed various pleas and exceptions, among them a prayer for oyer, an exception of vagueness and one of nonjoinder of parties. The contentions raised under those pleas and exceptions were met and disposed of by the filing of the docu-

ments called for and by the intervention of other parties plaintiff. Defendants then filed exceptions of no cause and right of action. These appear to have been vigorously pressed and upon submission were overruled by the trial judge.

Plaintiffs then filed a supplemental petition enlarging their allegations to the effect that all parties owning mineral rights in the 200 acre tract had acquiesced in and consented to the division of the original lease and urging a plea of estoppel. Defendants in turn filed a plea of estoppel based on the actions of Mrs. Bond's husband, J. L. Bond, in signing certain orders with respect to the oil being produced in and about the year 1925, and receiving until July 1942, his proportion of the proceeds thereof, all to the knowledge of his wife, who was living in the same house and in full community with him. As a further estoppel they pleaded that the sale under which Mrs. Bond claims title is simulated; that the property is community property and the community is estopped from denying the husband's authority in having leased it.

The defendants, Midstates Oil Corporation, James E. Smitherman and T. L. James and Company then filed a joint answer to the merits averring affirmatively that the instrument executed on September 10, 1930 between Smitherman and Ohio Oil Company was a sublease under which wells were drilled which produced oil in paying quantities and are presently producing;

otherwise they denied practically all other allegations of both original and supplemental petitions.

Ohio Oil Company filed a separate answer in which it joined issues in the same manner as the other defendants but asked in the alternative, that in the event judgment be rendered against Midstates Oil Corporation that same will not infringe or decrease an overriding royalty of 1/96 which it reserved on all oil gas or other minerals produced from any and all strata below a depth of 3000 feet.

On the issues as thus presented the case was tried in the district court where there was judgment in favor of the plaintiffs as prayed for and the demand of Ohio Oil Company to have its overriding interest in production below 3000 feet was recognized only to the extent of 1/96 of 3%oths of such production. The defendants have all appealed.

From the foregoing statement of the issues involved it would appear that they are quite numerous and very complicated. They become simplified however in view of the conclusion we have reached on the controlling question in the case which depends on the construction that is to be placed on the instrument of September 10, 1930 by which Smitherman transferred certain interests in 200 acres of the 320 acres he held under the original lease he entered into with R. P. Bond on July 14, 1919. If the instrument of September 10, 1930 had the effect of separating and di-

viding the original lease with respect to the 200 acres from the remaining 120 acres included in the lease of July 14, 1919, the plaintiffs must succeed in their demands because it is conceded that production in paying quantities having ceased with respect to the 200 acres, the only way in which it could be kept alive would be if it had not become separated and divided from the original lease and production on any part of the remaining 120 acres would have inured to its benefit.

That brings up for consideration, or it might be said for reconsideration, the same question that was before this court in the case of Stacy v. Midstates Oil Corporation, 214 La. 173, 36 So.2d 714, 716, in which the same parties were presenting practically the same issue and in which the court on the original hearing on an exception of no cause or right of action, held that the instrument of September 10, 1930, was an assignment as contradistinguished from a sublease. Had it been characterized as a sublease it would not have operated as a division of the original lease of July 14, 1919 and that lease would have been maintained in effect by production on other portions of the leased property. The instrument having been construed as an assignment, the court overruled the exception. It was found necessary however, in view of the lack of sufficient proof of failure of production in paying quantities, and also on the question of the abandonment of the original lease by Ohio Oil Company in having taken new top leases from all mineral interest holders except Mrs. Bond, to remand the case to the lower court. A rehearing was granted. On rehearing the court did not find it necessary to classify the instrument of September 10, 1930 as either an assignment or a sublease because, on noting that the plaintiff's contention, that an indivisible lease is subject to division by consent of all the parties and that there had been such consent in this case was not supported by an allegation in their petition to that effect or by any document annexed thereto, it concluded that the exceptions were well founded and the suit was accordingly dismissed.

Prompted, probably, by the judgment and decree on the original hearing in that case which held the instrument of September 10, 1930 was an assignment, plaintiffs instituted this suit in which they alleged that by the said instrument Smitherman and Ohio Oil Company had separated and divided the original R. P. Bond-Smitherman lease insofar as it affected the 200 acres therein described from the remaining portion of that lease and further alleged that if, for any reason, it could be maintained that the original lease could not have become effectively divided without the consent of all parties in interest, such consent had been given as evidenced by certain acts of the Ohio Oil Company and all the mineral and royalty owners throughout the 200 acres involved in the instrument of September 10, 1930 "other than Mrs.

Fannie Williamson Bond, Mrs. Corinne Norton and Miss Nellie Norton." As to these last three they set out other acts which they allege constituted acquiescence and consent.

If the allegations are based on the premise that the instrument of September 10, 1930 was an assignment, because it was so held in the original opinion in the former case, any contention made thereunder must fall in view of the fact that that opinion and the decree which followed it was set aside by the granting of the rehearing and that the opinion and decree on rehearing did not construe that instrument as either an assignment or a sublease.

Therefore the allegations become pertinent, in our opinion, only in the event that the instrument of September 10, 1930 was an assignment and not a sublease because, if it were the latter, its effect was to maintain the original lease in indivision and any consent or ratification on the part of other parties made them bound by it and certainly could not change or convert it into anything else than a sublease. Our impression is that in oral argument before this court, counsel for plaintiffs virtually conceded that if it were held to be a sublease that would end the case.

The important point to consider and determine then is what is the real nature and character of the instrument of September 10, 1930.

In the transfer by Smitherman to Ohio Oil Company made on that day, he, by the terms of the instrument, reserved unto himself an overriding royalty of 1/32 of the proceeds of all oil that might be produced from the 200 acres of land therein described from a depth in excess of 3000 feet from the surface. The instrument also contained the following clause: "Development of, and operations on the premises, if any, and the extent and character thereof, as well as the preservation or forfeiture of the leasehold, shall be solely at the will of said The Ohio Oil Company or its successors or assigns, and, upon termination of the leases covering the lands above described, for any cause whatsoever, there shall be no further liability hereunder."

The jurisprudence of this State is well settled that the distinction between an assignment on the one hand and a sublease on the other is that in an assignment the original lessee transfers all of his rights in the lease; whereas in a sublease he retains some control or interest in it. In the former case of Stacy v. Midstates Oil Corporation, supra, in the original opinion, the distinction is again recognized by the author, and the reason for it is stated as follows: "in the case of a sublease of a part of the leased land, the original lessee does not rid himself of all interest in and authority over the land subleased; whereas, if there is no such reservation on the part of the original lessee, his assignee acquires complete control over that part of the lease which is assigned." However he further stated that as in the instrument

under consideration it is declared that the Ohio Oil Company should have complete control over the lease and should have the exclusive right either to preserve or to forfeit the lease so far as it covered the 200 acres, the transfer had to be characterized as an assignment, "notwithstanding the reservation of the 1/32 overriding royalty on any oil that might be produced from a depth exceeding 3,000 feet below the surface."

The author of the opinion in that case happened to be the same who authored the opinion in the case of Smith v. Sun Oil Company, 165 La. 907, 116 So. 379, one of the earliest cases in which the distinction between an assignment and a sublease was before the court, and after quoting extensively from the French authorities on the subject, he finally concluded that the retention of an overriding royalty and the imposition of obligations under the penalty of reversion had the effect of making the lease a sublease and not an assignment. From a careful reading of the French authorities quoted from in that case it would appear that the retention of *any* interest by the lessee would make the transfer a sublease and not an assignment.

The basic principle of the Smith v. Sun Oil Company case was followed in the cases of Johnson v. Moody, 168 La. 799, 123 So. 330; Swope v. Holmes, 169 La. 17, 124 So. 131 and Roberson v. Pioneer Gas Company, 173 La. 313, 137 So. 46, 48, 82 A.L.R. 1264. The Roberson case in which

the opinion was also written by the author of the original opinion in the Stacy case, has apparently become one of the leading cases on the question of the distinction between assignments and subleases in oil and gas contracts for we find that it has been reported and annotated in American Law Reports, 82 A.L.R. 1264, and it apparently also serves as the basis for the text on that subject in American Jurisprudence, Vol. 24, Sec. 84, p. 591. Whilst in the Roberson case the instrument under consideration was held to be an assignment, the opinion discusses at great length, and with strong persuasion, the distinction between an assignment and a sublease and leaves no doubt but that the reservation of an overriding royalty is a sufficient retention or reservation of an interest in the lease to characterize the transfer as a sublease. And it gives the reason why that is so, in the following statement which we quote: "The reason why an obligation to pay an overriding royalty, or excess royalty, in a transfer of a lease, either in whole or in part, even though the transaction be called an assignment or a sale of the lease, characterizes the transaction as a sublease, and not merely an assignment, is that, in oil and gas leases, under the settled jurisprudence of this state, the payment of a royalty is the payment of rent, and is not the payment of a price for the oil or gas rights, as if they were sold." Several cases are cited to support the statement.

■ It would seem therefore, that regardless of any other rights which the lessee may retain or reserve, whether it be a right to control the forfeiture or the preservation of the lease, or the right of reversion, if there is the retention and reservation of an overriding, or excess royalty, that is sufficient of itself to stamp the transfer as a sublease.

Plaintiffs concede that the jurisprudence is to the effect that the payment of royalty is the payment of rent but they assert that the overriding royalty retained by Smitherman was not in the nature of rent but was a part of the purchase price, because it was to remain in effect, not only for the duration of that lease, but also under any extensions, renewals or other contractual obligations or covenants entered into by and between the Ohio Oil Company and the original lessor, or his assigns.

Smitherman did not convey all of his rights and interest in the R. P. Bond-Smitherman lease when he made the transfer to Ohio Oil Company in 1930. He retained an overriding royalty of 1/32 of the production for the duration of the lease. True he did give to Ohio Oil Company the right to forfeit the lease as far as the 200 acres was concerned, but as added protection for himself he inserted the provision which plaintiffs rely on above, that is, if they did forfeit this lease, that the overriding royalty should nevertheless apply to any new or future leases, thus doing away with any incentive Ohio Oil Company might have in allowing this lease to expire or lapse in order to save the royalty due.

■ We are of the opinion that the payment of the 1/32 overriding royalty to Smitherman so long as the lease remains in force is in the nature of rent, under the jurisprudence of this State, and the fact that it may continue to be paid under any future leases would not change its nature.

The principle enunciated in Roberson v. Pioneer Gas Company was followed in the recent case of Wier v. Glassell, 216 La. 828, 44 So.2d 882, in which it was definitely held that the retention of an overriding royalty by the lessee in a transfer made by him had the effect of constituting such transfer a sublease, notwithstanding the fact that the contract was denominated as an assignment.

■ We would think, therefore, that it is a settled proposition of law in this State that in a transfer of a lease such as we have before us that where the lessee making the transfer reserves unto himself an overriding royalty, that is a retention of an *interest,* regardless of any other terms or conditions that may appear, sufficient to characterize the transfer as a sublease. In that connection the following statement contained in the opinion in

Roberson v. Pioneer Gas Company appears to us to be extremely pertinent: "The decisions of the highest court of a state, on the subject of oil and gas leases, or mineral rights, establish rules of property; and they should not be reversed, even though a contrary rule might be deemed more logical, unless it be by an act of the Legislature." [173 La. 313, 137 So. 49.] That is sound and judicious advice and it is wise for us to follow it in this case.

Our conclusion is that the instrument of September 10, 1930 between J. E. Smitherman and Ohio Oil Company is a sublease which did not effect a division of the original R. P. Bond-Smitherman lease of June 14, 1919, and in the absence of any allegation in the plaintiffs' petition that there was no production of oil in paying quantities from the remaining 120 acres of that original lease, (such production now being conceded) the exception of no cause or right of action filed by the defendants was well founded and should have been sustained.

For the reasons assigned the judgment appealed from is avoided, set aside and reversed, and it is now ordered, adjudged and decreed that the exception of no cause or right of action be, and the same is sustained and the suit of plaintiffs is hereby dismissed at their costs.

FOURNET, C. J., absent.