MOORE, J.
|, The plaintiff, Gary Barham, appeals a judgment rejecting his claim for a declaration that a mineral lease executed in 1966 (“the 1966 lease”) by his parents, Mavis and Fannie Barham, had lapsed and that a subsequent mineral lease (“the 1990 lease”) was a novation, and for a judgment enforcing (or canceling) the 1990 lease, with unpaid royalties, statutory penalties and attorney fees. For the reasons expressed, we affirm.

Factual Background

The 1966 lease arose when Mavis and Fannie Barham granted an oil, gas and mineral lease over 80 acres in Bienville Parish to John Copeland.[1] Notably, the 1966 lease, a Bath form 14BR1-2A, provided for a standard 1/8 lessor’s royalty. In a 2007 deposition, Mrs. Barham recalled that once the well was drilled, about 1968, they started getting royalty checks. She had no records earlier than 1998, but recalled that sometime in the 1980s, royalties stopped. The lessees, or their assignees, maintained that they continuously paid the Barhams either royalties or shut-in payments.
In 1990, Jim Wedeberg, a landman from Shreveport, contacted the Barhams about leasing a separate 40-acre tract; apparently, they asked him to research the 1966 lease as well. Wedeberg advised them by letter that there was a gap in production from July 1986 through January 1987, and they should contact the operator to find out if operations were still ongoing. The Barhams’ lawyer, Darrell Avery, wrote So-nat, the lessee at the time, advising that the 1966 lease “may very well have terminated” because of |2this gap, and asking whether any reworking or additional drfil-ing occurred during those months.
In late November 1990, Bruce Freeman, Sonat’s senior landman, visited Avery. According to Avery’s subsequent letter to the Barhams, Freeman (who is now deceased) admitted the seven-month gap and stated his concern that Sonat might have let the lease lapse. Freeman explained that they were still checking their records, but if in fact the 1966 lease had lapsed, Sonat would come back “hat in hand and checkbook out” (Avery’s quotes) to execute a new lease.
In mid-December 1990, Sonat sent David McDonald, an independent landman, to carry a new lease to the Barhams. The 1990 lease, Bath form 14-BR1-2A-PX, naming Sonat as lessee, covered the same *707 80-acre tract as the 1966 lease, but contained a typewritten addendum that the lessor’s royalty is 1/5 instead of 1/8, and an attachment adding a Pugh clause and a surface damage clause, none of which were present in the 1966 lease. Mrs. Barham testified that she insisted on these new provisions. McDonald testified that he did not draft the 1990 lease (Freeman did), but that it was a “protection lease” — he also called it a “top lease” — taken because the 1966 lease was invalid. He testified that in the industry, if the underlying lease turns out to be valid, then the top lease never takes effect, and there is no intent to cancel the underlying lease.
James Light Jr., now a land manager for Franks Petroleum but a senior land-man at Sonat in the early 1990s, testified that around the time the 1990 lease was executed, United Gas, the local buyer, had shut in many 1 swells, and this would explain the seven-month gap in production. He felt sure that Franks Petroleum, the operator, had made shut-in payments to the Barhams, but because Sonat had just acquired virtually all of Franks Petroleum’s assets (it was “over a $100 million deal” so it “wasn’t a matter of just going into a filing cabinet and looking for a particular lease file”) he could not produce these records at the time. He was adamant that Sonat had no intention of canceling the 1966 lease if it was still valid. Light added that shortly after the 1990 lease was executed, Sonat uncovered the receipts showing quarterly shut-in payments in August and November 1986. With this evidence, Sonat deemed the 1966 lease still in effect, continued paying the Barhams 1/8 royalty, and treated the 1990 lease as a “protection lease” that never took effect.
Scott Morgan, land manager at Cypress Operating, testified that when Sonat assigned various leases to Cypress in 1995, only the 1966 lease was included, not the 1990 lease. He confirmed that Cypress was still paying the Barhams their 1/8 royalty under the 1966 lease.
Mavis Barham, one of the original lessors, died in July 2004. Fannie Barham, the other lessor, and Gary Barham, the couple’s son, felt that they were due the 1/5 royalty provided in the 1990 lease. In response to their inquiry, Morgan wrote to the Barhams’ counsel that “the 1990 lease was taken in error” by Sonat.

Procedural History

The Barhams filed this suit in September 2006 against St. Mary Land & Exploration, a farmout operator, Cypress Operating, the owner-operator |4of the lease, and El Paso E & P, the former owner of the lease, demanding a declaration that the 1966 lease was invalid for nonpayment of royalties; an award of all unpaid royalties; in the alternative, an award of 1/5 royalties under the 1990 lease; and damages, penalties and attorney fees provided by the Mineral Code. By amended petition, they alleged that the 1990 lease was a novation of the 1966 lease, but neither Sonat nor its successor, El Paso E & P, had ever paid them a dime of royalties on the 1990 lease.[2]
The defendants answered, describing the 1990 lease as a “protection top lease” taken by Sonat until it could determine the status of the 1966 lease; further, the 1966 lease was maintained in full by payment of royalties, delay rentals or shut-in royalties, and Sonat did not intend the 1990 lease to be a novation of the 1966 lease. They also *708 asserted estoppel and three-year prescription.
The Barhams moved for summary judgment, focusing on whether a novation occurred. In support, they cited Placid Oil Co. v. Taylor, 325 So.2d 313 (La.App. 3 Cir.1975), writ denied, 329 So.2d 455 (1976), which held that a top lease offering twice the royalty payment as two underlying leases effected a novation of those leases; notably, as in this case, the top lease in Placid Oil made no reference to the underlying leases granted by the lessor’s predecessor in title. The defendants opposed, citing the earlier opinion of Stacy v. Midstates Oil Corp., 214 La. 173, 36 So.2d 714 (1947), in which, on original hearing, the supreme court rejected a finding of novation even though the top lease expressly superseded the underlying |,dease. The court in Placid Oil did not cite Stacy, and perhaps was unaware of it, and a law review article severely criticized Placid Oil, Patrick G. Tracy Jr., The Effects of Top Leasing in the La. Law of Oil & Gas, 43 La. L.Rev. 1189 (1983). The district court denied the motion for summary judgment, finding that it hinged on the parties’ intent in entering the 1990 lease, but the arguments on the motion framed the issues on appeal.
Fannie Barham died in March 2012, and Gary Barham has been substituted as the only remaining plaintiff.
The matter came to trial in October 2012. The witnesses testified as outlined above. Gary testified that he had no firsthand knowledge of the circumstances surrounding the 1990 lease. Mrs. Barham’s 2007 deposition was introduced in lieu of her live testimony. She maintained that she had requested the 1/5 royalty, surface damage and Pugh clauses. However, she was equally convinced that when the land-man said that Franks Petroleum had “lost” the lease, he meant he had “mislaid” the physical document. She also admitted that the landman never told her the 1966 lease was invalid. Scott Morgan, Cypress Operating’s land manager, was called as a witness by the plaintiff. He acknowledged that in a letter to the Barhams’ lawyer, he stated that Sonat had taken the 1990 lease “in error.”
Testifying for the defendants, David McDonald, the independent landman hired by Sonat, conceded that neither the 1990 lease nor any of Sonat’s internal documents referred to it as a “top lease,” but this was what it actually was. He insisted he never told the Barhams that Sonat intended to cancel the 1966 lease. Scott Morgan, called by the defendants, also | ^testified that he also could find no evidence that Cypress intended to cancel the 1966 lease; the company was still paying 1/8 royalty pursuant to it. James Light Jr., Franks Petroleum’s land manager in the early 1990s, testified that only later, in November 1993, did they find the records of the shut-in payments made to the Bar-hams in late 1986. These records were introduced in evidence as Exhibit 3.

Action of the District Court

The court ruled orally, first saying that Sonat’s internal documents showed that the lessee believed that the 1990 lease “was going to be a new lease * * * whether you call it a novation or a renewal.” However, the court poignantly recalled a previous mineral rights case in which she had ruled against a doctrine voiced in a law review article by Professor Patrick Martin, her judgment was reversed on appeal, and she thus learned that the jurisprudence favors the industry.[3] After hear *709 ing further argument, the court admitted the issue was “not completely clear to me,” and stated it was “unseemly” to renegotiate a new lease “without letting people know specifically what’s going to happen down the road if the old lease is still good[.]” Nevertheless, the evidence did not show that the 1990 lease was a novation of the 1966 lease, so the court rejected Barham’s claim.
Barham has appealed, urging by one assignment of error that the court erred in holding that a novation did not occur and that the 1966 lease remained in effect.
| tApplicable Law
Novation is the extinguishment of an existing obligation by the substitution of a new one. La. C.C. art. 1879. The intention to extinguish the original obligation must be clear and unequivocal; novation may not be presumed. La. C.C. art. 1880. The burden of proof for establishing novation is on the person who asserts it. Scott v. Bank of Coushatta, 512 So.2d 356 (La.1987); Beasley v. Martin, 253 So.2d 801 (La.App. 2 Cir.1971). The intent of the parties is the paramount factor in proving a novation. Scott v. Bank of Coushatta, supra. Although Art. 1880 states that novation may not be presumed, doctrinal writers have stated that the intent to novate need not be expressly declared in the writing. Saúl Litvinoff, The Law of Obligations, 2 ed. (5 La. Civ. L. Treatise), West Group ©2001, § 17.2.[4] Professor Litvinoff elaborates (footnotes omitted):
The circumstances surrounding a particular transaction are often indicative of the parties’ intent to put an end to an obligation and substitute a new one in its place. The Louisiana jurisprudence has asserted that conclusion on numerous occasions. In case of doubt, a court should maintain the old obligation as coexisting with the new one.
In support, Professor Litvinoff cites, among other authorities, Placid Oil Co. v. Taylor, supra.
In the context of mineral rights, this court has recognized the practice of granting a “top lease” on property already subject to a mineral lease. Mobil Oil Exploration & Prod. Southeast v. Latham Exploration Co., 44,996 (La.App. 2 Cir. 2/3/10), 31 So.3d 1149, 175 Oil & Gas Rep. 339. | Jn Pilkinton v. Ashley Ann Energy LLC, 46,650 (La.App. 2 Cir. 11/2/11), at 7-8, 77 So.3d 465, 470, writ denied, 2011-2657 (La.2/10/12), 80 So.3d 484, we gave this definition:
Top leases are leases granted by landowners during the existence of another mineral lease that become effective if and when the existing lease expires or is terminated. Mobil Oil Exploration & Prod. Southeast [supra]. As a legal right, the top lease exists at its inception as a mere hope or expectancy in the extinction of existing superior leasehold rights, which extinction will confer upon the top lease owner the essence of a mineral lease, i.e., the right to explore for and produce minerals. Patrick G. Tracy Jr., The Effects of Top Leasing in the La. Law of Oil & Gas [supra].
The same lessee, or his successor in title, may secure a second lease from the same lessor covering all or part of the same interest before the first lease has expired. This “same party” top lease functions as one of several devices available to an operator to preserve leasehold *710 rights in a situation where, for example, he is doubtful about the validity of a former lease. Patrick Tracy, supra at 1190. One commentator has stated that the mere execution of a top lease, silent as to its effect on the existing lease, should not result in the extinction of the original lease by novation. Id. at 1193. The language of the instrument and the facts surrounding its execution are crucial factors in finding either the “common purpose” of protection — a top lease — or an intent to novate. Id.
The trial court’s factual findings regarding mineral leases are subject to manifest error review. Peironnet v. Matador Resources Co., 2012-2292 (La.6/28/13), at 35, — So.3d -, 2013 WL 3752474; Bradford v. Onshore Pipeline Const. Co., 37,421 (La.App. 2 Cir. 8/22/03), 853 So.2d 756, writ denied, 2003-2887 (La.1/9/04), 862 So.2d 986.

\JDiscussion

The parties concede that the 1990 lease makes no mention of the 1966 lease. Thus we find no clear statement of intent to extinguish the prior obligation, as required by La. C.C. art. 1880, and this would militate against finding a novation. However, such an intent may be inferred from the surrounding circumstances, as recognized by Scott v. Bank of Coushatta, supra, and Litvinoff, supra.
As noted, Gary Barham had no firsthand knowledge of the facts surrounding the execution of the 1990 lease. His mother, in her 2007 deposition, stated that the landman told her that Franks Petroleum had “lost” the lease, but she understood this to mean the lessee “mislaid” it; she admitted the landman never told her the 1966 lease was invalid. By contrast, nothing in Sonat’s records referred to the 1990 lease as a “top lease” or “protection lease.” However, David McDonald, the independent landman hired by Sonat to obtain the 1990 lease from the Barhams, testified that he never told them that Sonat intended to cancel the 1966 lease. He was clear that Sonat took the 1990 lease as a “top lease” or “protection lease” just in case the 1966 lease had lapsed for nonproduction. His explanation of the purpose of the top lease closely parallels this court’s discussion in Latham Exploration and Pilkinton, supra, as well as Patrick Tracy’s analysis in his law review article. These facts provide some basis for arguing an intent to extinguish the 1966 lease, but taken together, they preponderate to show that the 1990 lease was taken so Sonat could preserve its lessee’s position on the Barhams’ 80-acre tract.
| lftOther facts are also relevant to the parties’ intent. The event that precipitated the 1990 lease was the seven-month gap in production in late 1986; if unexplained, this would indeed have terminated the 1966 lease. La. R.S. 31:124. James Light, Sonat’s senior landman, testified that because Sonat had only recently acquired thousands of acres of leases from Franks Petroleum, the company could not immediately locate paperwork proving shut-in payments to the Barhams. This supports a finding that Sonat was “doubtful about the validity of a former lease,” a fact normally giving rise to a protective top lease. Patrick Tracy, supra at 1190.
Subsequent facts are also significant. James Light also testified that in 1993, Sonat located the records of the shut-in payments made to the Barhams in late 1986. These were not disputed, and show that the 1966 lease was never terminated for nonproduction. In 1995, when Sonat assigned its interest in various leases to Cypress Operating, it included the 1966 lease and not the 1990 lease. In 2005, Scott Morgan, Cypress Operating’s land manager, advised the Barhams’ counsel that the *711 1990 lease had been taken “in error.” He also testified, without contradiction, that Cypress Operating was still paying the Barhams the 1/8 royalty stated in the 1966 lease. While many of these facts are self-serving from the lessee’s standpoint, they tend to support the district court’s finding that the parties had no intent to extinguish the 1966 lease.
Barham argues vigorously that Placid Oil Co. v. Taylor, supra, mandates a finding of novation when the “top lease” makes no reference to the underlying leases and states a higher royalty payment to the lessors. In |1Tspite of the similarities, we are constrained to notice that in Placid Oil Co. the top lease was taken a mere 11 months after the term of the underlying leases began, and the court did not cite any evidence that anyone thought the underlying leases might be invalid. By contrast, the instant record is literally suffused with facts showing Sonat’s concern that its predecessor in title, Franks Petroleum, may have allowed the 1966 lease to lapse, Sonat’s intent to protect its status, and 24 years’ compliance with the 1966 lease. These facts easily distinguish the case from Placid Oil Co., supra. We also note the harsh criticism of Placid Oil in Patrick Tracy’s law review article and feel that his observations, though 30 years old, are consistent with this court’s analysis in Latham Exploration Co. and Pilkinton, supra.[5]
Finally, Barham argues that the court’s oral reasons seemed to contradict its ultimate holding, specifically that it was “unseemly” for Sonat’s agents not to tell the Barhams “what’s going to happen down the road if the old lease is still good.” However, the court prefaced these remarks by saying the reason the matter had to go to litigation was “not entirely clear to me,” and we share the court’s sense that a letter from Sonat or Cypress Operating, advising that shut-in payments had continued the 1966 lease and that the Barhams could disregard the 1990 lease, would probably have averted this disagreement. Nevertheless, the finding that the _Jjgl990 lease was not a novation and did not extinguish the 1966 lease is not plainly wrong. The assignment of error lacks merit.
In light of this resolution, we pretermit any consideration of Barham’s claim for a penalty and attorney fee under La. R.S. 31:140, or of the defendants’ arguments concerning lack of identity of the parties, estoppel, mutual or unilateral error, and prescription.

Conclusion

For the reasons expressed, the judgment is affirmed. All costs are to be paid by the appellant, Gary Barham.
AFFIRMED.

. Copeland assigned the lease to Sonat Exploration (now known as El Paso E & P) in 1967; Sonat assigned the lease to Franks Petroleum in 1970; Franks assigned its interest back to Sonat in 1989; Sonat assigned its interest to Cypress Operating Co. in 1995. See Joint Stipulations, R. pp. 272-276.

. The record shows, however, that Sonat paid, and the Barhams accepted, a $16,160 signing bonus for the 1990 lease.

. The court may have been referring to Will-Drill Resources Inc. v. Huggs Inc., 32,179 (La. App. 2 Cir. 8/18/99), 738 So.2d 1196, 143 Oil *709 & Gas Rep. 238, writ denied, 99-2957 (La.12/17/99), 751 So.2d 885.

. Professor Litvinoff cites 7 Planiol & Ripert, Traite pratique de droit civil franqais 670-672 (2 ed. 1954), and Weill & Terré, Droit civil — • Les obligations 1094-1095 (3 ed. 1980).

. Barham’s counsel shows that Mr. Tracy’s article is largely guided by the earlier supreme court opinion, Stacy v. Midstates Oil Co., supra, which was actually vacated on rehearing, a point acknowledged by Mr. Tracy. The rehearing, however, was based on the evidentiary ground that the underlying leases were “not part of the petition” but only introduced after the defendants filed an exception of no cause of action, and thus could not be properly considered by the court. While this pretermits the original opinion, it does not reject the court’s statement that "lessees often take top leases when they are doubtful about the validity of a former lease, without intending to impeach the title of a former lessor, or to surrender their rights under any former lease which may turn out to be valid.” Id. at 186, 36 So.2d at 718.