65 So.2d 598 (1952)
223 La. 274
BAKER
v.
POTTER et al.
No. 40601.
Supreme Court of Louisiana.
December 15, 1952.
On Rehearing April 27, 1953.
Campbell & Campbell, Minden, for defendant-appellant.
McConnell & McConnell, Springhill, for plaintiff-appellee.
McCALEB, Justice.
This is a suit for cancellation of a mineral lease for failure to make timely payment of the delay rental.
On September 15th 1947, plaintiff granted to Lawrence Potter an oil and gas lease covering 95.48 acres of land owned by him in Webster Parish. The lease had a primary term of five years and provided, among other things, that it would terminate, if drilling operations were not commenced within one year, "* * * unless on or before such anniversary date lessee shall pay or tender to lessor or to the credit of lessor in Springhill Bank and Tr. Co., Springhill, Louisiana, * * * the sum of One ($1.00) Dollar per acre * * *" rental for the privilege of deferring commencement of drilling operations during a period of 12 months and that, in like manner and upon like payments annually, the commencement of drilling operations could be further deferred for successive periods of 12 months each during the primary term.
On September 26th 1947, Lawrence Potter transferred his interest in the lease to H. C. Hoffert and L. D. Potter, residents of Racine, Wisconsin, retaining for himself a 1/32 overriding royalty.[1] On the same day, he conveyed this royalty interest to Mrs. *599 Avis Harper Herrick of Webster Parish who, on March 19th 1949, sold one-half of her interest to C. H. Williams of Caddo Parish.
No drilling operations were ever commenced on the leased property but the lease was nonetheless kept in force and effect until September 15th 1950 by the timely payment of the annual delay rentals provided for therein. At about 8:30 a. m. of that day, Lawrence Potter, acting as agent of the sublessees Hoffert and Potter, wired, via Western Union Telegraph Company, the rental payment of $95.48 to Springhill Bank & Trust Company for the credit of plaintiff. This money was received by the Western Union office at Springhill about two hours after it was sent. However, instead of making an immediate delivery of it, the operator of that office advised the bank by telephone that, whereas the money had arrived, she could not deliver it then for the reason that the telegram of transmittal did not show the point of its origin and that this information was essential, under rules of the company, before making payment of money orders. As a result, the money did not reach the bank on September 15th because it was after banking hours at the time the Western Union operator at Springhill was able to ascertain the point of origin of the funds. She therefore delivered the money to the bank on the next day, Saturday, September 16th, and the funds were credited to plaintiff's account on the following Monday, September 18th 1950.[2] Plaintiff, however, refused to accept the credit, taking the position that the deposit came too late. This suit followed, in which Potter, the original lessee,[3] Hoffert and L. D. Potter, the nonresident sublessees and Mrs. Herrick and Williams, the royalty owners, are made parties defendant.
Mrs. Herrick and Williams did not defend the suit and judgment against them was taken by default. Hoffert and L. D. Potter, the sublessees, appearing through a curator ad hoc, filed answer denying plaintiff's claim for a forfeiture. They contended that the delay rental had been sent by their agent, Lawrence Potter, in ample time to reach the bank on September 15th 1950; that the failure to deliver it on that day was due entirely to the fault of Western Union Telegraph Company and that, under the circumstances, it would be inequitable for the court to declare a forfeiture of the lease.
After a hearing on this issue, there was judgment in favor of plaintiff and against all defendants other than Lawrence Potter. The curator ad hoc for Hoffert and L. D. Potter has prosecuted this appeal from the adverse decision.
Plaintiff's position, in the lower court and here, is that the lease terminated upon the failure of the lessee to deliver the delay rental to the bank on or before September 15th 1950 and that the fact that the money would have been delivered in time, but for the negligence of the Telegraph Company, is unavailing to the defense as the Court may not resort to equity when there is express lawthe contract of the parties, see Articles 1901 and 1945, LSA-Civil Codegoverning the issue.
Plaintiff's postulation conforms with the above cited codal articles and is fully supported by the jurisprudence in matters involving mineral leases providing for forfeiture or termination of the contract in the event the delay rentals are not delivered to the lessor or his agent on or before the day specified in the contract. See Jennings-Heywood Oil Syndicate v. Houssiere-Latreille *600 Oil Co., 119 La. 793, 44 So. 481; Pure Oil Operating Co. v. Gulf Refining Co., 143 La. 284, 78 So. 560 and Wilder v. Norman, 147 La. 413, 85 So. 59. Considerations of equity are not admissible for the determination of contractual rights clearly expressed; resort may be had to natural law and reason only where positive law is silent. Article 21, LSA-Civil Code.
On the other hand, the contract in the case at bar, unlike the leases considered in the authorities above cited, does not evince that it was the desire of the parties that the lease would ipso facto terminate in case the delay rentals were not delivered to the lessor or the bank on or before their due date. Indeed, the paragraph of the lease in the instant case providing for a continuance of the contract in force by payment of delay rentals during its primary term, after specifying for payment of such rentals to the lessor or the Springhill Bank on or before the anniversary date of the lease, contains the following sentence:
"The payment or tender of rental may be made by the check or draft of lessee mailed or delivered to lessor or to said bank on or before such date of payment." (Italics ours).
Thus, it is clearly expressed that the mailing by the lessee of his check or draft on or before the due date of the delay rental suffices and is to be considered as effectively discharging the requirement that such rental be paid on or before the anniversary date of the contract. And it cannot be doubted that, had the sublessees placed their check or draft in the mails on September 15th 1950, a forfeiture would have been averted even though the payment did not reach the lessor or the bank until a later date. But, since the funds were not mailed, the question arises whether the use of any other reliable agency for their delivery was permissible under the contract.
We believe that it was. When the parties provided that the deposit of the rentals in the mails on or before their due date was a compliance with the contract, they indicated their intention, we think, that forfeiture of the lease would not ensue in the event of delay in the delivery of the payment occasioned by the negligence of the transmitting agency, or from other causes not attributable to the lessee. And the fact that the parties designated the mails as the transmitting agency did not, in our view, necessarily exclude the use of another agency of equal reliability as, obviously, the important circumstance for which the parties was providing was the timely placing of the funds into safe hands for delivery to the lessor in the ordinary course of events and not the particular mode of transmission.
Consequently, we rule that the delivery by Potter of the money to the Western Union Telegraph Company on September 15th 1950 constituted a fulfillment of the lease contract notwithstanding that the payment did not reach the bank until September 16th or a later date.
The judgment appealed from is reversed and plaintiff's suit is dismissed at his costs.

On Rehearing
LE BLANC, Justice.
This suit, as stated in the opinion on the original hearing, had for its purpose, the cancellation of a mineral lease for failure to make timely payment by lessee of the delay rental. The plaintiff lessor had prevailed in his demand in the lower court but on appeal the judgment cancelling the lease was reversed, this Court having held that delivery of the money to the Western Union Telegraph Company on September 15, 1950, the day on which the delay rental was due, fulfilled the requirements of the lease contract notwithstanding the fact that the payment did not reach the bank which had been designated as the lessor's depository until September 16, 1950 or a later date. The decree reversed the judgment appealed from and dismissed the plaintiff's suit at his costs.
The plaintiff, who lost his case on appeal, did not apply for a rehearing but the defendants did. In their application they called attention to the fact that whereas in their answer they prayed for the dismissal of plaintiff's suit and also that there *601 be judgment in their favor "continuing and extending the oil, gas and mineral lease, the subject of this litigation, as to all of the terms, conditions, rights and privileges for a period of two (2) years from and after termination of this suit; * * *", the decree of this Court failed to grant them such relief which they are entitled to. A rehearing was granted, restricted to the question presented in the application.
In their brief in support of their application, counsel for defendants acknowledge their oversight in having failed to call the matter to the court's attention and they also stress the necessity of extending the lease beyond its primary term. Under the well established jurisprudence they are clearly entitled to an extension, having prayed for it in their answer and having become the successful appellants in the case. In Williams v. James, 188 La. 884, 178 So. 384, 386, it is stated: "There is no reason why the lessor should be allowed to deprive the lessee of a part of the term of his lease by withholding possession of the leased premises without just cause. It has been decided, with regard to oil and gas leases, that, if the lessee is prevented by a lawsuit from beginning operations within the time stipulated, he is entitled to an extension for the time of such hindrance, if he is successful in the lawsuit. Gulf Refining Co. v. Hayne, 148 La. 340, 86 So. 891; Standard Oil Co. v. Webb, 149 La. 245, 246, 88 So. 808; Fomby v. Columbia County Development Co., 155 La. 705, 706, 99 So. 537. The principle is applicable here."
In a later case, Knight v. Blackwell Oil & Gas Co., 197 La. 237, 1 So.2d 89, the court again recognized this jurisprudence but could not apply it because the point had not been raised in the trial court by the defendants, they had not appealed nor had they answered the appeal taken by the plaintiff. In the present case, as we have seen, the defendants presented the issue in answer to plaintiff's suit for cancellation of the lease, they prayed for judgment granting them the extension and were successful as the appellants before this Court.
Counsel for plaintiff have filed a brief in rebuttal to the application for rehearing in which they urge that if plaintiff should be granted an extension it should be only for a reasonable time to commence drilling operations and not for a period equal to the period of this litigation over the lease. The logic on which the action of the court in granting the extension in cases of this kind is based, is that the lessee has been deprived of his exercise of the rights granted to him by the lease by the act of the lessor in having filed and prosecuted the lawsuit against him and clearly as is stated in Fomby v. Columbia County Development Co., supra, "The period of this litigation should not be included in determining when the leases expire." [155 La. 705, 99 So. 542] (Italics ours.)
In the present case, the lease was executed on September 15, 1947 and was for a primary term of five years. By its own terms therefore it would have expired on September 15, 1952. This suit was filed on October 17, 1950 at which time the lease had been in existence three years, one month and two days, leaving an unexpired period of one year, ten months and twenty-eight days. The defendant-lessee is therefore entitled to an extension of that period of this unexpired time from the date this judgment will become final. The decree rendered on the original hearing should be amended accordingly.
For the reasons stated it is ordered that the decree heretofore handed down be amended by adding the following thereto:
It is further ordered, adjudged and decreed that the primary term of the lease herein sued on be and the same is hereby declared to be in full force and effect for a period of one year, ten months and twenty-eight days from the date of finality of this judgment and, as thus amended, it is hereby reinstated and made final.
NOTES
[1] Although this instrument is styled an assignment, it is in reality a sublease forasmuch as Lawrence Potter retained an overriding royalty. See Bond v. Midstates Oil Corp., 219 La. 415, 53 So.2d 149 and cases there cited.
[2] This is the testimony of the Western Union operator, which is denied by one of the bank officials who says that the money was delivered by mail on Monday, September 18th 1950. This divergence in the evidence is of no importance to the decision, as plaintiff's contention is that it was incumbent upon the lessee to deliver the payment to the bank on or before September 15th 1950, or suffer a forfeiture.
[3] Lawrence Potter filed an exception of misjoinder to plaintiff's petition on the ground that he, having transferred all his rights under the lease, was without interest in the litigation. It does not appear that this exception was formally passed on by the judge but, as this defendant was not cast below, the matter is immaterial.