## EMERSON et al. v. LITTLE SIX OIL CO.

(Circuit Court of Appeals, Fifth Circuit. December 17, 1924. Rehearing Denied January 30, 1925.)

No. 4389.

Mines and minerals ☞79(1)—Deed to royalty held to convey interest in realty under terms of lease.

An oil lease provided that, on the production of oil in paying quantities, the lessee should become at once vested with an estate in all minerals, including oil. Assignees of the lease produced oil in paying quantities, after which one sold his interest to the other, but reserving an overriding royalty which he afterward conveyed to defendant by deed. *Held*, that such deed conveyed an estate in the land, which, so long as the lease remained in force, it was not within the power of the parties to the assignment to divest by an attempted cancellation and annulment of the assignment.

Appeal from the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Suit in equity by the Little Six Oil Company against Marie T. Emerson and others. Decree for complainant, and defendant appeals. Reversed and remanded.

W. D. Gordon, of Beaumont, Tex., for appellants.

Geo. E. Holland, of Orange, Tex., for appellee.

Before WALKER and BRYAN, Circuit Judges, and CLAYTON, District Judge.

BRYAN, Circuit Judge. This suit was brought by the Little Six Oil Company, appellee, to cancel a deed from Sloan A. Emerson to his wife, Marie T. Emerson, which purports to convey an overriding royalty of 1 per cent. in an oil and gas lease of 45 acres of land. Emerson and his wife, the appellants, answered and prayed for a decree sustaining the validity of the deed and establishing in Mrs. Emerson the royalty interest thereby conveyed.

The facts are not in dispute. The original lease was from the owner of the fee-simple title, Oscar Chesson, to one Dodd, by whom it was assigned to the Little Six Oil Company, appellee. That lease conveys all of the oil and gas in and under the land, also the exclusive right of drilling, and reserves to Chesson one-eighth of all oil produced. It provides that if oil be found in paying quantities, the lessee shall become at once vested with an estate in and to all minerals, including oil, underlying the land, as long as any of said minerals shall be produced in paying quantities.

After oil in paying quantities is found, the lessee is given the right either to continue to develop the property or to abandon operations and surrender the lease. The rights granted extend to the heirs, legal representatives, and assigns of the lessee.

Appellee assigned the original lease to Noble and Emerson upon the following conditions: That they would promptly begin active operations in the drilling of wells; that upon the completion of the first well, they might drill other wells in conformity to the requirements of the original lease, and in the event they should elect to abandon operations, they should give appellee 45 days' prior notice; and that if the production of oil should reach 100 barrels per day, the appellee, upon paying one-half the costs of previous drilling and operating expenses, should be entitled to one-half of the oil produced.

Noble and Emerson drilled a well which produced oil at a rate in excess of 100 barrels a day. Thereafter, Emerson conveyed by deed to Noble, for a consideration of $10,000, all his interest except an overriding royalty of 1 per cent., which he reserved in all the oil to be produced from the property. Subsequently Emerson conveyed the royalty so reserved to his wife.

Noble continued operations under the lease, drilled a second oil-producing well, and afterwards entered into an agreement with the appellee, which recited that the contract between the appellee on the one part and Noble and Emerson on the other was "set aside, annulled and canceled," and by which the appellee assigned to Noble all its rights in the north half, and Noble in turn assigned to it all his rights in the south half, of the tract of land held under the original lease from Chesson. In order to protect their rights under the original lease, this partition agreement provides, in the event either party should desire to cease operations, for prior notice of 60 days to the other party, who thereupon should become entitled to the entire interest in the whole lease, and to do anything necessary to prevent a forfeiture. At the time the property was so divided, Noble notified the appellee of the reservation by Emerson of 1 per cent. royalty, and besides the appellee had knowledge from an examination of the abstract of title that such reservation had been made.

The original lease has not been abandoned. Appellee sold its interest in the south half and reserved a $1/24$ royalty. The companies now operating the property

purchased from the appellee and have been withholding the royalty reserved by Emerson. They were made party defendants, and offered to pay into the court the fund already accumulated, and in the future to pay to the appellee or to Mrs. Emerson the royalty in dispute, in accordance with the decree of the court.

The District Court entered an order canceling the royalty deed from Emerson to his wife, and directing the producing companies to pay, without deducting 1 per cent., the full $1/24$ royalty to the appellee.

Upon the production of oil in paying quantities, an estate in the land was created, subject to be divested upon condition subsequent; that is, the failure to comply with the terms of the original lease. The estate so created was a base fee. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566. As the lease remains in force, the estate still exists. Emerson's conveyance to his wife was made after the estate vested. The reservation of the royalty was therefore an interest in the land, and not a mere personal right enforceable only against Noble. It is immaterial that the partition agreement between Noble and the appellee referred to the former assignment of the lease by the appellee as being canceled and annulled. All that was meant by that expression, as it appears to us, is that one contract was being superseded by another. But, aside from that, Noble had no power to dispose of Emerson's vested interest, if it be conceded, contrary to the fact, that he attempted to do so. Emerson's assignment of all his interest except the royalty which he reserved was not an abandonment of the lease, and is no more open to attack than is appellee's assignment of its interest to the companies which are at present operating thereunder. All that was required was that the lessee or his assigns comply with the terms and conditions of the lease. It is immaterial whether the acts essential to such compliance are performed by the original or a subsequent lessee. Forfeiture is carefully guarded against, both in appellee's contract with Noble and Emerson and partition agreement with Noble.

The conclusion we reach is that the court should have denied the relief asked by the appellee, and granted that prayed for by the appellants.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.