70 So.2d 433 (1953)
224 La. 619
BERMAN et al.
v.
BROWN.
No. 40567.
Supreme Court of Louisiana.
April 27, 1953.
Dissenting Opinion April 30, 1930.
On Rehearing November 9, 1953.
Dissenting on Rehearing November 12, 1953.
Rehearing Denied January 11, 1954.
John W. Bryan, Jr., Jack W. Thomson, Jr., Chaffe, McCall, Toler & Phillips, New Orleans, for plaintiffs-appellants.
Harvey Peltier, Solomon S. Goldman, New Orleans, for defendant-appellee.
HAWTHORNE, Justice.
In this court appellants, Mary Jane Berman, Robert J. Chauvin, Henry P. Mirandona, P. & J. Realty Company, and James F. Turnbull, are seeking a reversal of a judgment of the lower court which rejected their demand to be recognized as owners in indivision of a 1/16 of 8/8 of the oil, gas, and other minerals produced under a mineral lease granted by D. V. Doussan Oil & Planting Company of Lafourche, Inc., to defendant-appellee Joe W. Brown on June 26, 1944, and which rejected also their demand for an accounting of all the oil, gas, and other minerals produced under the lease from the leased property.
This lease of June 26, 1944, will hereafter be referred to as the "second lease". Approximately eight years before the execution *434 of the second lease, the fee owner, D. V. Doussan Oil & Planting Company, executed an oil, gas, and mineral lease covering the same property to Allan B. Crowder, and by mesne conveyances appellants Mirandona and Chauvin became the owners of this lease, which will be designated hereafter as the "first lease". These appellants subleased the entire tract, reserving to themselves a 1/16 part of 8/8 of all the oil, gas, and other minerals that might be produced under the lease. This sublease provided:
"The one-sixteenth (1/16) part of the eight-eighths (8/8) of all the oil, gas and other minerals excepted and reserved by assignors herein shall apply and be a part of all future renewals, extensions and new leases made by assignee on the lands covered by the herein described lease or leases for a period of one year from the date of the expiration of said lease or leases." (All italics ours.)
This is the clause on which appellants rely in this appeal for recognition of a royalty interest in the second lease. The legality of this clause is conceded by the appellee and is not an issue on this appeal.
The sublease from Mirandona and Chauvin further provided that all conditions between the parties thereto should extend to their heirs, executors, administrators, successors, and assigns. Subsequently Mohawk Corporation acquired the lease subject to these provisions and in turn conveyed it to defendant-appellee Joe W. Brown. In the transfer from Mohawk to Brown, Mohawk reserved a 1/8 overriding royalty, and this act of transfer provided that it was made subject to the royalty interest of appellants Henry P. Mirandona and Robert J. Chauvin. Thus Brown acquired the first lease with a working interest of only 11/16 of 8/8 of all the oil and gas that might be produced under it, because 1/8 (or 2/16) had been reserved by the fee owner, 1/16 by Mirandona and Chauvin, and 1/8 (or 2/16) by Mohawk; that is, he acquired this lease subject to 5/16 outstanding royalty interests. On the same day he acquired this lease, Brown assigned it to Mabro Oil Company, Inc., a corporation which had been formed by him, his brother, and two associates for the purpose of developing the lease.
About three years later, the fee owner, D. V. Doussan Oil & Planting Company of Lafourche, Inc., instituted suit against Mirandona, Chauvin, Mohawk, Brown, and Mabro to cancel the oil and gas lease for nondevelopment and failure to pay delay rentals, and judgment was rendered as prayed for in favor of the fee owner on May 12, 1944. Less than two months after the rendition of this judgment, Joe W. Brown acquired the second lease on the same property from Doussan. Production was obtained by Brown from the property under this second lease, and plaintiffs-appellants instituted this suit.
Both Mohawk and Mabro drilled wells on the property when they had the first lease, and some oil was produced from the leased premises as a result of their drilling operations, but the return from the wells was so small that the fee owner became dissatisfied and instituted suit for cancellation of the lease, as hereinabove set out. The defendants in that suit appeared and filed answers of general denial. During the pendency of the suit, D. V. Doussan Oil & Planting Company, plaintiff, and defendants Mirandona and Chauvin entered into a compromise agreement in which Mirandona and Chauvin agreed that a judgment be entered by the court cancelling the primary lease and the various assignments thereof, and plaintiff, the fee owner, agreed to waive and abandon all claims which it had against Mirandona and Chauvin, whether for back rents, current rents, or future rents, or for damages or attorney's fees. Joe W. Brown and the other defendants were not parties to this agreement. Their attorney addressed a letter to the district judge informing him that they had made no appearance on the date the case was fixed for trial because they had no defense to urge and had no objection to the rendition of judgment.
The court rendered a judgment of cancellation which provided that the cancellation of the lease should be "* * * without *435 prejudice to said defendants' rights in and to what is known as the Doussan No. 3 Well and the twenty-five (25) acres which surround it", and this provision was made pursuant to the terms of the lease itself that, "In case of cancellation or termination of the lease for any cause, Lessee shall have the right to retain under the terms hereof twenty-five acres of land around each well producing * * *."
During the time the landowner's suit for cancellation of the first lease was pending, a meeting of the board of directors of the Mohawk Corporation was held in the office of Miss Emily Ashmore, a notary public, in the City of New Orleans. The appellee Joe W. Brown as a director of the corporation was at this meeting, and, according to Miss Ashmore, "one of the Mirandonas" was also present, but she could not identify the one present as the appellant, and the record does not disclose whether this was the appellant Henry P. Mirandona or his brother Albert. At this meeting Brown stated that he was interested in acquiring a new lease on the property and offered to convey a 1/64 interest in a new lease, if acquired, to Mohawk Corporation and also to Mirandona for a consideration of $3,000. This proposition was accepted by Mohawk.
The object and purpose of the stipulation that the reservation by Mirandona and Chauvin under the first lease of 1/16 part of the 8/8 of all the oil, gas, and other minerals "shall apply and be a part of all future renewals, extensions and new leases made by assignee on the lands covered by the herein described lease or leases for a period of one year from the date of the expiration of said lease or leases" was to prevent the surrender of the lease by the sublessee and its subsequent reacquisition by the sublessee or his assigns free of appellants' interest, or to protect the sublessors from what is commonly known in the oil fraternity as a "washout", or to insure what we may simply term "fair play".
The evidence in this record convinces us that Brown was most anxious to circument this stipulation and to be able to develop this property without the encumbrance of the overriding royalties. Albert Bendernagel, the president of D. V. Doussan Company, testified in the suit for cancellation that from 1941 until the suit was filed in December, 1943, he called on Brown on numerous occasions to discuss the matter of further development of the property or the payment of rentals; that Brown indicated that he would like to drill one or two more wells but that it did not suit him to do so at that time; that, as time passed, Brown finally admitted to him that he had lost interest in further drilling because of the overriding royalty then existing in Mirandona and Chauvin of 1/16 and in the Mohawk Corporation of 1/8, and that the risk was too great to put up the money required to drill and carry the overriding interests. Brown himself testified in the present suit that he would not have taken the lease with only 11/16 working interest except to do his brother and their associates a favor. He testified: "* * * I told you except for doing my brother and our associates a favor I wouldn't have gone into that thing with 11/16 working interest."
The record clearly shows that, while the suit for cancellation of the first lease was pending. Brown was contemplating taking a new lease on the identical property covered by the first lease, and less than two months after the judgment of cancellation of the first lease he did acquire from the landowner the second lease on the premises. There can be no doubt that the failure to develop the property under the first lease or pay the delay rentals was caused by his dissatisfaction with the outstanding royalties of a 1/8 in Mohawk and a 1/16 in Mirandona and Chauvin. It is evidence that the object in failing to pay the delay rentals and in failing to develop the leased property was to make the existing lease subject to cancellation and to wipe out the overriding royalties, so that a new lease could be obtained free from them. In fact, the old lease could have been kept alive by the same expenditure he made for the new lease, for, according to Brown's own testimony, he acquired the new lease for the same amount that was due for the rentals for the delay in drilling under the old lease. He stated: "* * * I could get the lease. All the Doussans *436 wanted was their back delay rental, which amounted to $12,000.00, and that turned out to be the fact, because that was the consideration of the lease I subsequently got was $12,000.00 premium payment and $6000.00 delay rental."
Brown apparently accomplished his object insofar as Mohawk's 1/8 royalty was concerned by allowing the first lease to expire and taking the second lease, but he overlooked the provision that the 1/16 royalty reserved by Mirandona and Chauvin was to apply to, and be a part of, any new lease, which was designed to prevent such a scheme or plan as this. Let us now consider whether the judgment in the landowner's suit for cancellation of the first lease for nondevelopment and failure to pay delay rentals had the effect of nullifying the provision so that Brown could take the second lease free of it.
That judgment, insofar as it may be pertinent, reads as follows:
"It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, The D. V. Doussan Oil and Planting Company of Lafourche, Inc., and against the defendants, Mabro Oil Company, Joe W. Brown, Mohawk Corporation, Henry P. Mirandona, and Robert J. Chauvin, ordering and decreeing the cancellation, annulment and forfeiture of that certain oil, gas and mineral lease which the said D. V. Doussan Oil and Planting Company of Lafourche, Inc., granted and executed in favor of Allen B. Crowder on May 19, 1936, the same being registered in C.O.B. 77 folio 175, as Entry No. 31866, of the Parish of Lafourche, and which by the terms of the lease covers, as the leased property two thousand (2000) acres of land owned by petitioner and situated in the Parish of Lafourche and more particularly described as follows:
* * * * * *
"It is further ordered, adjudged and decreed that there be judgment in favor of the D. V. Doussan Oil and Planting Company of Lafourche, Inc., and against the defendants, Mabro Oil Company, Joe W. Brown, Mohawk Corporation, Henry P. Mirandona, and Robert J. Chauvin, ordering and decreeing the cancellation, forfeiture and annulment of all subsequent transfers and assignments of said lease insofar as said transfers and assignments by the said defendants and/or their assigns may bear upon petitioner's heretofore described property, said subsequent or intermediate cancellations to begin with the assignment and transfer by Allen B. Crowder to Henry P. Mirandona and Robert J. Chauvin, embrace and include all subsequent or intermediate transfers by the said Mirandona and Chauvin and/or their assigns, and end with the assignment by Joe W. Brown to Mabro Oil Company, as said transfers and assignments may appear of record in the Conveyance Office of the Parish of Lafourche.
"It is further ordered, adjudged and decreed that the Clerk of Court and Exofficio Register of Conveyances for the Parish of Lafourche be and he is hereby ordered and directed to cancel and erase from the records of his office, not only the inscription * * * of the basic oil, gas and mineral lease which the said D. V. Doussan Oil and Planting Company of Lafourche, Inc., granted to Allen B. Crowder on May 19, 1944 [1936], but also all other inscriptions of transfers and assignments of said lease insofar as said transfers and assignments may bear upon petitioner's above described property; that, in particular, said Clerk of Court and Ex-officio Register of Conveyances for the Parish of Lafourche be and he is hereby authorized, empowered and directed to cancel and erase from the records of his office the following inscriptions insofar and only to the extent that said inscriptions may bear against, affect or encumber the title to plaintiff's heretofore described property: * * *."
Appellee argues that this judgment cancelled and terminated the stipulation in the sublease made by appellants Mirandona and Chauvin for a 1/16 royalty in any future lease.
The judgment cancelled and terminated the assignment or sublease made by Mirandona and Chauvin insofar as it may have borne upon the property of the plaintiff, D. *437 V. Doussan Oil & Planting Company, and instructed the clerk of court to cancel the sublease or assignment "* * * insofar and only to the extent that said inscriptions may bear against, affect or encumber the title to plaintiff's heretofore described property * * *". However, in considering the judgment's effect on the stipulation, we must bear in mind that plaintiff in that suit, the fee owner, was seeking a cancellation of its obligation, the first oil and gas lease, for nondevelopment and failure to pay rentals, and that this was the only issue before the court in the suit. A judgment rendered therein in favor of Doussan could not and did not affect an independent obligation existing exclusively between defendants in that suitan obligation by which Brown bound himself that the reservation in the first lease was to apply to, and be a part of, any second lease taken by him on the same property; an obligation which arose between the sublessors and the sublessees subsequently to the execution of the first lease by the landowner; an obligation in which the landowner was not concerned and was without interest, and which never could operate as an obligation against it. Thus the judgment of cancellation could not and did not have the effect of nullifying the stipulation so that Brown could acquire the second lease free from Mirandona and Chauvin's overriding royalty.
To the royalty claim asserted by appellants, appellee also pleads res judicata, basing this plea on the judgment rendered in the landowner's suit to cancel the lease. Under Article 2286 of the Civil Code, the essential elements of the plea of res judicata are: The thing demanded must be the same; the demand must be founded on the same cause of action and must be between the same parties and formed by them against each other in the same quality. None of these requisites is present in the instant case, and there is no merit in this plea.
In connection with this plea of res judicata appellee argues also that Brown is a privy in title with Doussan and stands in its shoes in regard to this judgment. Since we have concluded that the judgment obtained by Doussan did not nullify the royalty provision, standing in Doussan's shoes or being a privy of Doussan does not aid Brown in this action.
Defendant-appellee further contends that these appellants are now estopped to assert any rights that they may have by virtue of (1) the judgment rendered in the landowner's suit for cancellation of the lease for nondevelopment and failure to pay rentals, (2) acts of silence in connection with the meeting of the board of directors of Mohawk Corporation held in Miss Emily Ashmore's office, and (3) certain releases executed by appellants Mirandona, Chauvin, and Turnbull to the landowner after the judgment of cancellation.
It has been stated by this court that "The cases holding that estoppels are not favored by our courts are legion in our jurisprudence. Whenever estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, the burden of proving the facts upon which the estoppel is founded, as well as the affirmative showing that he was misled by the acts and forced to act to his prejudice, resting upon the party invoking the doctrine. * * *" Harvey v. Richard, 200 La. 97, 7 So.2d 674, 677, and authorities therein cited.
In the recent case of Janney v. Calmes, 212 La. 756, 33 So.2d 510, 513, it was said: "Regarding the equitable estoppel pleaded, the jurisprudence of this court is that an estoppel is not favored and that it will not be maintained unless the person urging it has been misled, to his prejudice, by acts of omission or commission of him who is sought to be estopped. * * *" See also authorities therein cited.
Appellee argues that the appellants are estopped by the judgment in the landowner's suit cancelling the assignment or sublease in which these appellants reserved their overriding royalty because they allowed it to be rendered without taking any appeal therefrom, because any defense they might have had should have been urged at that time, and because Brown thereafter secured the second mineral lease based upon his *438 search of the public records, where this judgment was recorded.
As we have heretofore pointed out, this judgment did cancel the assignment so that it could no longer operate as an obligation against the property of the plaintiff landowner in that suit, but it could not and did not affect the independent obligation existing exclusively between the defendants in that suit. That obligation could never have been urged against Doussan and was not an issue in that cause. There was no dispute whatever among the defendants in that suit, and there was no duty upon the part of these appellants, Mirandona and Chauvin, to urge the royalty provision against Doussan because it was no defense to its demand for cancellation of the lease for nondevelopment and failure to pay rentals. Since Brown acquired the first lease subject to this provision, which was a matter of record, and this obligation of the sublease according to its terms was to extend to the successors and assigns thereof, it cannot be said that he was a third person in regard to it and even entitled to rely on the public records when he took the second lease. Under these circumstances we fail to see how the doctrine of estoppel is applicable.
At the meeting of the stockholders of Mohawk held in the office of Miss Ashmore, Brown at that time, as we have heretofore pointed out, offered to sell for a consideration of $3,000 a 1/64 royalty interest in a new lease that might be secured. Appellee argues that under these circumstances it was the duty of Mirandona, who allegedly was present, to speak up if he pretended to claim an interest in any such lease which Brown might obtain, and that, by permitting the judgment in the fee owner's suit to be rendered and by permitting Brown to spend large sums of money in developing the property under the second lease, Mirandona by his silence is now estopped to assert any right he may have.
Under the jurisprudence, the burden of proving the facts upon which the estoppel is founded rests upon Brown, and the record here does not disclose whether the Mirandona who was present at the meeting was, actually, Henry P. Mirandona, the appellant. However, if we take the position most favorable to appellee and assume that it was Henry P. Mirandona, there would be no estoppel against Chauvin. Brown has not shown, moreover, how there was any duty upon Mirandona to speak or that he, Brown, was misled and acted to his prejudice because of Mirandona's silence. In fact, Brown testified that he was not acquainted with the Mirandonas or Chauvin, and that "* * * if he [Mirandona] walked in the door right now I doubt if I would recognize him". His detached attitude as to Mirandona is revealed by the following testimony elicited from him in regard to the meeting in Miss Ashmore's office:
"Q. Mr. Brown, did you ask Mr. Mirandona at the only meeting you had for a release of any interest he might have in any future lease on the Doussan property? A. No, I didn't.
"Q. You did not? A. No."
There is no evidence in this record to indicate that Brown took the second lease in reliance upon acts of omission or commission of Mirandona and Chauvin. From the presentation of this case it appears that he erroneously concluded that they had been "washed out" by the judgment of cancellation, but it is not shown that any acts of theirs caused him to make such error, or that it was their duty to correct his error.
The elements of equitable estoppel are totally lacking here. According to 3 Pomeroy's Equity Jurisprudence (Symon's 5th Ed.), see. 805, at p. 191, these elements are: (1) There must be conductacts, language, or silenceamounting to a representation or a concealment of material facts; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him: (4) *439 the conduct must be done with the intention, or at least the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it to his prejudice.
This court in the case of Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604, 608, recognized these principles as the basis of estoppel by silence, saying:
"* * * `Mere silence will not work an estoppel. There must be some other element connected with the transaction and the silence to prevent a person from asserting his rights or claim. * * * But to effect an estoppel by silence it must also appear that the person had a full knowledge of the facts and of his rights, that he had an intent to mislead, or at least a willingness that others should be deceived, and that the other party was misled by his attitude.' * * *"
There is nothing to show that Brown, as an assignee or sublessee of the first lease, which he had taken subject to the royalty stipulations in the sublease of Mirandona and Chauvin which were of record, was not just as familiar with all the facts as was Mirandona, or that Mirandona's silence amounted to a misrepresentation or concealment of any material fact upon which Brown relied and acted to his prejudice.
We shall not consider the third ground of estoppel, based on the releases to Doussan. After the judgment of cancellation two instruments were executed in favor of the landowner, one signed by Mirandona and Chauvin and the other by appellant James F. Turnbull. In the first instrument Mirandona and Chauvin granted to the landowner, D. V. Doussan Oil & Planting Company, a full acquittance, discharge, release, and quitclaim of the rights reserved to them in the judgment which cancelled the first lease, and particularly of any rights they might have had in Doussan No. 3 well and the 25 acres surrounding it. In the other instrument James F. Turnbull quitclaimed to the landowner any rights that he might have had in the first lease.
We fail to see how the releases executed by Mirandona, Chauvin, and Turnbull can operate as an estoppel in the instant case. These releases were nothing more than a quitclaim to, and in favor of, the landowner. Brown was not even a party to these documents, and these appellants certainly did not relinquish any of their rights as to him. Brown could not have relied on these documents in taking the second lease, as it was taken long before their execution.
Brown argues further that, since the sublease by Mirandona and Chauvin contained a provision for reassignment if a future assignee did not want to pay rentals, this was the only obligation of the successors during the primary term, and that the provision urged by the appellants would take effect only in the event the lease expired at the end of the primary term. He argues that the words "expiration of said lease" mean "expiration of the primary term of said lease". If that is what the parties meant, they could easily have said it, and should have, because it is well known to all dealing with a lease that it can expire in other ways than by expiration of its term. There is no merit in this argument.
Brown argues also that the first lease had not expired because a reservation was made in the judgment as to the 25 acres around the No. 3 well. This reservation was made in accordance with a provision of the lease itself that in case of cancellation or termination for any cause the lessee could retain 25 acres around each producing oil well. The language of this provision clearly contemplates that it would become effective only upon expiration of the lease.
Appellee's next argument is that the royalty provision of Mirandona and Chauvin did not apply to him because he was not a successor or assign within the meaning of the clause "all conditions between the parties hereunto shall extend to their heirs, executors, administrators, successors and assigns". Within the contemplation *440 of that provision he was a "successor or assign" because the rights under the lease were transferred to him even if only for a short time. Brown says that he was merely "interposed" between Mohawk Corporation and Mabro Oil Company, but cites no law to show that such a person is not bound by the agreement he makes.
Brown attempts to avoid the effect of the royalty provision by interpreting it to mean not that the assignors would participate in any lease taken within a year from the expiration of the first lease, but that they would participate in a second lease for a year after the expiration of the first lease. This meaning is a strained and unreal one and would be completely contrary to the obvious purpose of the provision.
In an attempt to show their diligence and promptness in making their claim, appellants called witnesses for the purpose of establishing when they first had knowledge that oil and gas had been produced from the property covered by this second lease and of showing that they had communicated with the appellee within three months after they had been informed that production had occurred on the property, setting forth and claiming their interest, but upon objection of appellee's counsel these witnesses were not permitted to testify.
Appellants prayed that they be recognized as owners in indivision of a 1/16 interest in 8/8 of the oil, gas, and other minerals produced under the second lease. However, from the record we are not able to determine the respective interests of appellants Mary Jane Berman, P. & J. Realty Company, and James F. Turnbull, and under these circumstances we propose to recognize the interests of appellants Mirandona and Chauvin and reserve to the other appellants the right to assert against Mirandona and Chauvin any rights they may have to the 1/16 royalty of Mirandona and Chauvin.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that appellants Henry P. Mirandona and Robert J. Chauvin be recognized as the owners in indivision of a 1/16 interest in 8/8 of the oil, gas, and other minerals under the mineral lease executed by the D. V. Doussan Oil & Planting Company of Lafourche, Inc., to Joe W. Brown on June 26, 1944, recorded in C.O.B. 111, Folio 505, of the records of the Parish of Lafourche, Louisiana, and that Joe W. Brown account to these appellants for their 1/16 of the 8/8 of all oil and gas produced under this lease.
It is further ordered that the right be reserved to the appellants Mary Jane Berman, P. & J. Realty Company, and James F. Turnbull to assert against Mirandona and Chauvin any rights they may have to the 1/16 royalty interest of Mirandona and Chauvin.
Appellee Joe W. Brown is to pay all costs.
FOURNET, C. J., and PONDER, J., dissent.
HAMITER, J., is of the opinion that defendant's plea of estoppel should be sustained.
FOURNET, Chief Justice (dissenting).
H. P. Mirandona and Robert J. Chauvin who, in transferring to Henry J. Montagnet the mineral lease of May 19, 1936, executed by D. V. Doussan Oil and Planting Co. to Allan B. Crowder and acquired by them through mesne conveyance, specially excepted and reserved "unto themselves 1/16th part of 8/8ths of all the oil, gas and other minerals on the land described" in the lease, which interest "excepted and reserved by assignors * * * shall apply and be a part of all future renewals, extensions and new leases made by assignee on the lands covered by the herein described lease * * * for a period of one year from the date of the expiration of said lease," instituted this suit (joined by Mary Jane Berman and P. & J. Realty Company, also claiming an interest) against Joe W. Brownwho, it is alleged, is producing oil and gas under a lease acquired *441 by him on the identical premises within a year of the date of cancellation of the lease to Crowder by judgment of court in the lessor's suit for cancellation, even though Brown had been one of the assignees under that leaseseeking judgment (1) to have themselves recognized "as the owners of the seven-eighths of the lease entered into between D. V. Doussan Oil and Planting Co. of Lafourche, Inc. and Allan B. Crowder, May 19, 1936, and for an accounting of all oil, gas, * * * produced therefrom from June 26, 1944," or, in the alternative, (2) that "petitioners be recognized as the owners of a one-sixteenth undivided interest in the said lease; for an accounting," etc. By supplemental petition filed more than a year later they amended to seek either specific performance of "the reassignment of the 7/8 working interest" and 7/8 of the oil, gas, etc., produced from the second lease, or, in the alternative, recognition of their ownership of 1/16 of 8/8 of all oil produced under the second lease; and on the same day one James F. Turnbull intervened.
The defendant Brown, in answer to the suit and in argument before this Court on the appeal taken by the plaintiffs from the judgment dismissing their suit, contends that the judgment cancelling the first lease also cancelled all subsequent transfers and assignments thereof, including the interests here in contest, and that it is res judicata with respect to this proceeding; moreover, that prior to judgment in that suit, at a meeting held for the purpose of discussing a course of action, he endeavored on his own behalf and on behalf of the Mabro Oil Corporation (his transferee) to maintain the lease as originally granted, telling them that he himself was interested in the lease but that it could not be properly operated with all the outstanding interests; however, that they could come to no agreement, and despite the fact of their knowledge that he wished to obtain a lease they allowed him to negotiate the lease without making it known that they were still claiming an interest in it; further, Mirandona and Chauvin executed the document of September 20, 1948, expressly releasing any rights they had in and under the lease granted to Crowder, and having waived all their rights they are now estopped from making further claim.
I am of the opinion that whatever rights plaintiffs had under the Crowder lease by virtue of the reservations made by them in assigning the lease to Montagnet were voided, under the clear and unmistakable language of the judgment of the court, which ordered a cancellation, annulment, and forfeiture of the lease, and of all subsequent transfers and assignments of said lease, "to begin with the assignment and transfer by Allan B. Crowder to Henry P. Mirandona and Robert J. Chauvin, embrace and include all subsequent or intermediate transfers by the said Mirandona and Chauvin and/or their assigns, and end with the assignment by Joe W. Brown to Mabro Oil Company, as said transfers and assignments may appear of record in the Conveyance Office of the Parish of Lafourche." (Emphasis mine.) The Clerk of Court was specifically ordered to cancel from the records not only inscription of the basic oil and gas lease, "but also all other inscriptions or transfers and assignments of said lease * * *," and among the 37 particular inscriptions ordered cancelled is listed the one under controversy here.
The fallacy of the majority view, based on the conclusion that the annulment and cancellation of the assignment made by Mirandona and Chauvin is limited to the obligation due the landowner because of the inclusion in the judgment of the clause "insofar and only to the extent that said inscriptions may bear against, affect or encumber the title to plaintiff's heretofore described property", is at once evidence when that judgment is viewed in the light of the disclosures in the record, which reveal that the assignment from Mirandona and Chauvin to Montagnet (where the reservation was originally made) included not only the Doussan Lease but some 20 other leases in which the Doussan Company had no interest whatsoever, affecting tracts of land owned by others (Rene J. *442 LeBlanc, Charles J. Plaisance, Camille C. Barrios, Alcee Arcenaux Estate, Mrs. Lucille Arcenaux, Mrs. E. Arcenaux, Mrs. Elie Ducos, Estate of Anatole Plaisance, Mrs. Eugene Plaisance, Albert P. Falgout, Sylvest Trosclare, Luke Guidroz, Charles B. LeBlanc, Oscar Chaisson, Surville Chaisson, Elson Orgeron, Emile E. LeBlanc, Maude LeBlanc, and Camille C. Barrios); consequently, when the Court rendered its judgment ordering the cancellation of the basic lease, it decreed the nullity and ordered the cancellation of all subsequent and intermediate transfers by Mirandona and Chauvin and their assigns only insofar as the inscriptions thereof bore against the property of Doussan; of necessity it could not order the Clerk to cancel the inscriptions insofar as they affected the other leases transferred by Chauvin and Mirandona in that instrument. Doussan had no interest, and the Court had no right, to go farther.
A review of the proceeding to cancel the lease, in which the plaintiffs here, Mirandona and Chauvin, were parties defendant, styled D. V. Doussan Oil & Planting Company of Lafourche, Inc. v. The Mabro Oil Co., Inc., et al., discloses that the landowner, whose property had been encumbered with a lease dating from May, 1936, wished to clear his land of the many overriding interests with which the lease had become burdened by their acts in transferring samehe having been apprised by Mabro Oil Co. that no further drilling operations would be undertaken, that the large outlay and risks involved were too great when measured against the existing outstanding override of considerably more than 25% of the whole. According to the allegations of the petition, certain wells which had been originally productive in a small sense soon became depleted and were no longer capable of producing in a commercial sense; revenues had dwindled to the vanishing point; and no renewal rentals had been paid for the past two years, so that the lease had long since terminated under its own terms; however, in an effort to revitalize the lease, a letter had been written to the interested parties (including the plaintiffs here, Mirandona and Chauvin), making these facts known and seeking an adjustment satisfactory to the party who was attempting to carry out the drilling operations; failing to receive a response, the parties were advised that they would be given ten days from date to voluntarily execute a release; and failing in that attempt the landowner, being interested in ridding his property of the burdens placed on the lease as a result of the various assignments by them, in order to secure proper development of the land by granting a lease free of these encumbrances, instituted suit.
It seems to me that if the plaintiffs here had been interested in the development of the Crowder lease, when they were informed through the lessor that the defendant Brown and Mabro Oil Company were no longer willing to carry out the obligation to drill and the lease was about to be forfeitedin fact, had already lapsedthe steps proposed by the lessor would not have been ignored by them, but, instead, would have been accorded some consideration. It is obvious to me that they were not interested in paying the delay rentals or expending the large sums of money necessary for the proper development of this property under the lease, for in the instrument whereby the plaintiffs reserved to themselves the so-called 1/16th interest there is contained the additional proviso: "Assignee shall not release or relinquish any of said leases to the original lessor;" and "should assignee desire not to pay rentals on any of the leases * * * he shall, twenty full calendar days before the rental due date * * * release or reassign said lease or leases to the assignors * * *." Yet, at the meeting in Miss Ashmore's office, when plaintiffs were apprised of the fact that Brown and Mabro Oil Company were dissatisfied with the continued operation of the lease under the burdens imposed by the plaintiffs here, the latter neither expressed a desire for a continuance of the lease nor requested that it be surrendered to them. Nor did they, when the suit was filed for cancellation of the lease by Doussan Company, suggest that such interest as *443 they had under their assignment be reserved to them. On the contrary, they appeared in court through counsel, declaring:
"This matter having been settled by compromise between the plaintiff and defendants, Mirandona and Chauvin, it is agreed by counsel of record for said parties that the following stipulations be entered and made part of the record in this case:
"1st. That a judgment be entered, ordering the cancellation of the lease granted to Allan B. Crowder on May 19, 1936, covering two thousand acres of land owned by the plaintiff in the Parish of Lafourche, a detailed description of which acreage is contained in the original lease, which has been referred to and made part of plaintiff's petition in the present suit, and said cancellation of the lease shall carry with it the cancellation of the assignment referred to in plaintiff's petition from Crowder to Mirandona. This cancellation is made subject to the condition precedent that final judgment will be rendered against all defendants ordering the cancellation of the primary lease and other various assignments, and that the failure to render a judgment of cancellation against the defendants, Mabro Oil Co., Mohawk Corporation, Inc., and Jos. W. Brown, shall render this stipulation null and void.
"2nd. That Plaintiff, through counsel waives and abandons any and all claim or claims which it has or may have against said defendants, Henry B. Mirandona and Robert J. Chauvin, whether for back rents, current rents, or future rents, or whether for damages or attorney's fees, or any claim whatsoever.
"3rd. That said judgment of cancellation shall cover all acreage, except the twenty five acres which surround what is now known as `Doussan Well No. 3,' and which is presently producing some small amount of oil and gas." (Emphasis mine.) Consequently, the Court, acting pursuant to this stipulation, rendered the judgment hereinabove referred to annulling and cancelling the basic lease and all subsequent transfers and assignments thereof in their entirety, and ordering the Clerk to cancel inscriptions from the record, excepting the 25 acres surrounding the Doussan Well No. 3; so that Brown was not only lulled into the belief, but was fully justified in believing, that the plaintiffs were no longer interested in the lease and that the property had been cleared of all outstanding claims. Acting on this belief, he secured the lease of June 26, 1944, for a consideration of $12,750, and spent some $750,000 in developing the lease.
But if there is any doubt that the Court's judgment of cancellation had the effect of completely wiping out whatever interest the plaintiffs had by virtue of the reservation made by them in transferring their interest in the original lease to Montagnet, I believe that their asserted claims must be acknowledged to be totally worthless when examined in the light of the document executed by the plaintiffs Mirandona and Chauvin on September 20, 1948 (as well as an instrument of similar import executed by Turnbull on August 22, 1948), wherein they granted to the original lessor a full release and quitclaim of their rights in and to the Doussan Well No. 3 and the 25 acres surrounding same, and also of any and all rights which they had or may have in and under the lease.
The majority view, in holding that this instrument was merely intended to quitclaim their rights in and to the 25 acres surrounding the Doussan Well No. 3, reserved to them in the judgment cancelling the lease, evidently overlooked the fact that the instrument in question contained two distinct stipulations, the first, quitclaiming the interest reserved to them in the judgment, covering the 25 acres surrounding the well, and the second, a clause declaring: "And the said appearers do further give and grant unto the said D. V. Doussan Oil & Planting Company of Lafourche, Inc., a * * * quitclaim of any and all rights which they have or may have in and under *444 a certain oil and gas lease granted unto Allan B. Crowder by the said D. V. Doussan Oil & Planting Company of Lafourche, Inc., on May 19, 1936, the same being registered * * *," etc. (Emphasis mine.) So, clearly, if they ever had any interest following the cancellation of that lease by judgment of court, it was quitclaimed and transferred to Doussan, Brown's lessor, and plaintiffs are therefore without further interest in the premises.
The plaintiffs, by their own action in proceeding against the defendant Brown in this suit, clearly demonstrated that they had very little faith in their claim unless it were to secure a gratuity through compromise, for despite the instrument just above referred to, which clearly divested them of any possible interest in the so-called Crowder lease, yet their main demand is based on that instrument; and it is only in the alternative, to add to their chance of getting something, that they included their claim to the 1/16th overriding royalty under an instrument which they had already quitclaimed to the landowner.

On Rehearing
McCALEB, Justice.
On May 19, 1936, D. V. Doussan Oil & Planting Company, the owner of a 2000 acre tract of land in Lafourche Parish, granted a mineral lease thereon to A. B. Crowder. This lease was subsequently acquired by plaintiffs, Mirandona and Chauvin, who transferred it to Henry J. Montagnet on July 26, 1938, together with many other mineral leases which they had acquired from Crowder. Montagnet split his holding in the Crowder lease into a number of fractional interests which he transferred to various persons but thereafter these small interests were gathered together in a company, known as Mohawk Corporation. On December 4th 1940, Mohawk "assigned" the Crowder lease to the defendant, Joe W. Brown, and, on the same date, Brown transferred it to Mabro Oil Company, Inc., in which he held a controlling interest.
Thereafter, the lease was developed and some oil was obtained but, by March of 1933, production had dwindled to 72 barrels per month and, from then on, the output from the entire 2000 acre tract never exceeded 100 barrels per month. Meanwhile, the landowner, Doussan Company, had become increasingly dissatisfied with the small returns and, on April 24, 1943, its attorney wrote to all persons interested in the mineral lease directing their attention to the lack of commercial production, the absence of any drilling operations, since March of 1941, and the nonpayment of delay rentals in lieu thereof. Upon the failure of these lessees, their assignees or sublessees to respond, counsel for Doussan advised them again in writing, on May 28, 1943 that the lease had terminated for lack of production in paying quantities and requested that they stipulate this to be the fact and execute a voluntary cancellation of the lease. These notifications were without avail and, finally on December 21, 1943, Doussan filed suit for recognition that the lease had expired by its own terms because of the lessee's failure to comply with its covenants. Plaintiffs, Mirandona and Chauvin, as well as Brown and other transferees, were made parties defendant to that action in which cancellation was sought of all of the transfers and assignments identified with the lease as well as of the lease itself.
On May 12, 1944, judgment was rendered by the Court, conformable with plaintiff's prayer, decreeing the cancellation of the lease and all of the assignments and transfers thereof, insofar as such assignments and transfers might bear upon the 2000 acres owned by Doussan, and the Register of Conveyances for the Parish of Lafourche was directed to erase from his records all of the various inscriptions of any rights acquired under or by virtue of the lease or assignments thereof.[1]
*445 On June 26, 1944, less than two months after rendition of the judgment, Doussan Company granted a new mineral lease to Brown covering the same 2000 acres, for which Brown paid a cash bonus of $12,750. He immediately began development, expending approximately $750,000 in drilling six wells and succeeded in obtaining good production.
Five years after Brown had secured this lease, Mirandona, Chauvin and others instituted the present suit against him, praying to be recognized as owners of 7/8ths interest in the original lease and, alternatively, for a 1/16th undivided interest and an accounting. Following joinder of issue and four days before the date of the hearing, plaintiffs filed a supplemental petition in which they sought recognition as owners of an undivided 7/8ths interest in the lease between Doussan and Brown and, in the alternative, for a 1/16th interest therein and an accounting. Plaintiffs have since abandoned their initial demands and are now insisting only that they be recognized as owners of an undivided 1/16th of the production from the Brown lease and for an accounting.
This claim stems from a reservation contained in the instrument, dated July 26, 1938, wherein Mirandona and Chauvin transferred the Crowder lease to Montagnet, along with various other mineral leases which they had acquired from Crowder. As part of the consideration of that contract, Mirandona and Chauvin excepted and reserved to themselves 1/16th of all of the oil, gas and other minerals on the land described in the lease and made it incumbent upon Montagnet to withdraw this 1/16th part of the minerals and to pay and deliver the proceeds from their sale unto them. It was further provided that:
"The one-sixteenth (1/16) part of eight-eighths (8/8) of all the oil, gas and other minerals excepted and reserved by assignors herein shall apply and be a part of all future renewals, extensions and new leases made by assignee on the lands covered by the herein described lease or leases for a period of one year from the date of the expiration of said lease or leases."
It is the contention of plaintiffs that Brown is a successor and assign of Montagnet; that, this being so, he became bound royalty to include all renewals, extensions and new leases made within one year from the expiration of the original lease, and that, therefore, as he made the new lease within two months of the cancellation[2] of the original lease, it became his personal obligation to turn over 1/16th of all production from that lease to them.
On the other hand, defense counsel assert, amid their other points, that Brown was not an assignee of Montagnet but a sublessee of Mohawk Corporation and, hence, is not bound by any of the personal obligations of Montagnet to Mirandona and Chauvin.
On first hearing, a majority of the court rejected this contention, being of the view that Brown was a successor or assign of Montagnet within the meaning of a clause contained in the agreement between, Mirandona, Chauvin and Montagnet, reading "all conditions between the parties hereunto shall extend to their heirs, executors, administrators, successors and assigns."
We are now convinced that we were in error in this resolution. To begin with, it seems clear that the conveyance from Mirandona and Chauvin to Montagnet *446 and the subsequent transfer, on December 4, 1940, from Mohawk Corporation to Brown were not assignments, as they are labelled, but subleases. The reason for this is that in each transfer the "assignors", by reserving an overriding royalty, retained an interest in the lease (1/16th in the Montagnet sublease and 1/8th in the Brown sublease). See Smith v. Sun Oil Co., 165 La. 907, 116 So. 379; Johnson v. Moody, 168 La. 799, 123 So. 330; Swope v. Holmes, 169 La. 17, 124 So. 131; Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264 and Bond v. Midstates Oil Corp., 219 La. 415, 53 So.2d 149.
Forasmuch then, as Brown was a sublessee of Mohawk and not an assignee of Montagnet, no privity of contract existed between him and Mirandona and Chauvin and therefore he neither assumed nor did he become liable for the personal covenant of Montagnet in favor of Mirandona and Chauvin. It was only the assignees and successors of Montagnet who stood in his shoes and became affected by his promises. Thus, if it be assumed that the transferees of Montagnet (including Mohawk Corporation, acquired under assignments or by operation of law, they became liable for his engagement with Chauvin and Mirandona. Not so, however, with Brown for he, as a sublessee of Mohawk Corporation, had no privity of contract with Mirandona and Chauvin and was not responsible for Montagnet's covenant with them.
It is firmly established in our jurisprudence that there is no contractual obligation by and between a lessor and a subtenant. See Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33, 124 Am.St. Rep. 456 and Smith v. Sun Oil Co., supra, and authorities there cited. Compare J. F. Auderer Laboratories v. Deas, 223 La. 923, 67 So.2d 179. In Smith v. Sun Oil Co. [165 La. 907, 116 So. 381], this court made a comprehensive review of the French commentators and also the rules obtaining in other States under the general law respecting the difference between an assignment and a sublease. The opinion quotes approvingly from Taylor on Landlord and Tenant, 9th Ed., Section 16, thus:
"`And the importance of this distinction consists in this, that, while an assignee is liable to the original lessor for all the obligations of the lessee by virtue of the privity of estate that subsists between them, no action can be maintained by the lessor against the undertenant, upon any covenant contained in the lease, since there is neither privity of estate nor of contract between himself and the undertenant.'" (Emphasis ours.)
Applying the foregoing reasoning to the case at bar, it will be at once seen that, apart from all other reasons, Mirandona and Chauvin are without right or claim against Brown under his present lease with Doussan Co. The royalty reserved by them in the Montagnet transfer extended to the production obtained under the Crowder lease and this right was enforceable as against all assignees and sublessees alike so long as that lease was in esse. But the reason why their royalty interest was effective as to Brown and any other sublessee, as well as all assignees, during the time that the first lease was in force, was not because of any contractual relationship between Brown or any other sublessee and Mirandona and Chauvin. It was because the interest they had reserved had been placed of record in the Parish where the land was situated. However, when the Crowder lease was declared terminated by the judgment of court and plaintiffs' royalty interest also specifically cancelled and erased from the records, the only right remaining in them was their royalty reservation to share in the production from any new lease which Montagnet or his successors and assigns might make with Doussan Co. within one year from the expiration of the Crowder lease. This royalty reservation was obviously a contingent one as it was to become effective only in case of a future eventi. e., the production of minerals from the original leased premises under a new lease taken by Montagnet or any of his assignees within a year from the expiration of the first *447 lease. This suspensive condition did not occur and therefore no royalty interest in plaintiff became extant for the obligation due by Montagnet was a personal one and was enforceable only against him and those standing in his shoes. Brown as a sublessee, was not bound by it.
Counsel for plaintiffs harbor the belief that, because the sublease from Mohawk Corporation to Brown stipulated that it was subject to the reservations contained in the transfer from Mirandona and Chauvin to Montagnet, Brown individually assumed Montagnet's obligation to them.
The flaw in this position is that Brown did not assume Montagnet's obligation; he merely accepted the sublease "subject to" plaintiffs' reservation. This did not bind him for Montagnet's personal convenant to plaintiff; it simply rendered the sublease amenable to plaintiffs' royalty reservation, so long as the original lease was in force. Gauche v. Gerdes, 10 Orleans App. 56. Indeed, inasmuch as plaintiffs' royalty reservation was of registry, the relied on provision in the transfer from Mohawk to Brown added nothing to plaintiffs' rights.
The judgment appealed from is affirmed. Appellants are entitled under our rules to apply for a rehearing.
FOURNET, C. J., concurs.
HAWTHORNE, J., dissents.
FOURNET, Chief Justice (concurring).
I am in full accord with all the reasons for judgment expressed in the majority opinion; and for the added reasons given by the writer in his dissenting opinion when the case was originally before the Court, I concur in the decree.

On Rehearing
HAWTHORNE, Justice (dissenting).
I take issue most vigorously with the implication in the majority opinion that the basis of the decision on rehearing is a rejection of this court's conclusion as to a contention made on original hearing. The argument was not made on original hearing or on rehearing that the obligation in the transfer from Mirandona and Chauvin to Montagnet was one which, because of its nature, would not be binding on sublessees. No contention has ever been advanced by defendant that this royalty obligation was a personal obligation rather than a real one, and a cursory study of the jurisprudence and the legislative enactments will show that no such proposition could have been successfully urged. The matter is now so well settled that diligent and industrious counsel for the defendant did not expend their time and effort arguing such a matter.
The most careful and thorough consideration was given on first hearing to each argument advanced by defendant to avoid liability under the royalty reservation in dispute. Some of the arguments may have been given more consideration and more careful answering than was warranted on the basis of their merit and strength. The resulting lengthy and exhaustive opinion on original hearing was due to the fact that some members of the court felt that the equities of the case were with the defendant, as demonstrated by the content of the dissenting opinions filed to the original opinion, and the varied grounds upon which they were based. This feeling in regard to the equities of the case may be the explanation of why the decision was reversed. I cannot agree, however, with the reasoning of the majority opinion, which I deem to be unsound, or with its disregard of established law. I must therefore respectfully dissent.
As pointed out in the original opinion, I am convinced that the equities of this case are entirely with the plaintiffs, and in this connection it is interesting to note that courts of other jurisdictions have felt strongly that the equities in such a case as this are not with the defendant but with the overriding royalty owner. See Oldland v. Gray, 10 Cir., 179 F.2d 408; Kennedy v. Seaboard Oil Co. of Delaware, *448 D.C.Cal., 99 F.Supp. 730; Probst v. Hughes, 143 Okl. 11, 286 P. 875, 69 A.L. R. 929; Thornburgh v. Cole, 201 Okl. 609, 207 P.2d 1096; see also 3 Summers, Oil and Gas, sec. 554, at p. 320, 1953-54 Supp. p. 103; Glassmire, Oil and Gas Leases and Royalties, sec. 64, at p. 240. They have recognized that, because the overriding royalty interest is dependent upon a lease for its existence, it is possible for a lessee by inequitable and unconscionable action to destroy, wipe out, or, in the vernacular, "wash out" the overriding royalty interest. The courts have taken the view therefore that the equities are with the one whose interest can be defeated by the will of another. In the Kennedy case, supra, decided in 1951, it was recognized that the courts will go far to protect a person having a reserved royalty interest from the inequitable conduct of an assignee or grantee. In that case the court held that a stipulation in connection with the reservation of an overriding royalty that it would "run with the land" had the same effect as if it had provided that it would apply to all extensions, renewals, or modifications of the lease, and that the transfer of the operational rights to an association organized to operate the oil lands in the area under an agreement to eliminate wasteful competitive practices did not defeat the royalty.
My disagreement with the majority opinion, however, is not on the question of where the equities lie, but with its disregard of settled legal principles and with the doubt, questions, and inconsistencies it will cause in the oil and gas law of this state. The development, progress, and prosperity of the oil industry is dependent upon lease, mineral, and royalty interests being real interests and not merely personal ones so that the parol evidence rule and the laws of recordation will be applicable to them. Until this decision it was apparently unquestioned that royalty payable under a lease, a lessor's or sublessor's royalty, is a real interest and a real obligation.
Whether the analogy is right or wrong, it is now well settled that royalty under a mineral lease is rent. See Shell Petroleum Corporation v. Calcasieu Real Estate & Oil Co., 185 La. 751, 170 So. 785, and authorities therein cited; Daggett on Mineral Rights (rev'd ed.), sec. 52, p. 256. In Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 48, 82 A.L.R. 1264, it was recognized that an obligation to pay an overriding royalty is an obligation to pay rent. There the court said: "The reason why an obligation to pay an overriding royalty, or excess royalty, in a transfer of a lease, either in whole or in part, and even though the transaction be called an assignment or a sale of the lease, characterizes the transaction as a sublease, and not merely an assignment, is that, in oil and gas leases, under the settled jurisprudence of this state, the payment of a royalty is the payment of rent * * *." In Bond v. Midstates Oil Corp., 219 La. 415, 53 So.2d 149, 154, it was held that an overriding royalty was rent notwithstanding that it was to be payable also under future leases. In that case the question of whether the whole of a lease had been kept alive by development of a part of it depended upon whether a transfer of a part of the lease had been a sublease or an assignment. Those contending that the transfer was an assignment argued that a reservation of an overriding royalty by the lessee in the transfer was not in the nature of rent but was a part of the purchase price because it was to remain in effect, not only for the duration of that lease, but also under any extensions or renewals. This court said in answer to that contention: "We are of the opinion that the payment of the 1/32 overriding royalty * * * so long as the lease remains in force is in the nature of rent, under the jurisprudence of this State, and the fact that it may continue to be paid under any future leases would not change its nature." (Italics mine.)
In United Gas Public Service Co. v. Barrett, La.App., 179 So. 506, the court held that a transfer of rent royalty, or royalty due under a lease, is a real obligation that passes with the land. The question in that case was whether the transfer by a lessor of a part of his royalty, when *449 duly recorded in the conveyance records, was binding on the owners of minerals acquired subsequently to the recordation of the transfer. The court reasoned that royalty payable under a mineral lease is rent, that under Article 2017 of the Civil Code a rent charge on immovable property forms a real obligation which passes with the land, and that therefore the transfer of a part of the rents to become due was a rent charge imposed on immovable property, and that, when it was recorded, it was notice to the public so that all subsequent purchasers of mineral rights took them subject to the recorded transfer. A writ of certiorari or review was refused by this court, and the decision has never been questioned. The conflict and inconsistency of the foregoing jurisprudence with the opinion in this case is immediately apparent. If an overriding royalty which is to continue to be paid under future leases is rent under the Bond case, supra, and a transfer of a portion of rent or royalty under a lease is a real obligation running with the land under the Barrett case, this decision that an overriding royalty obligation which is to apply to future leases is a personal one cannot stand.
Any doubt that an overriding royalty which is to continue under future leases is a real obligation one would have thought was settled by the case of Wier v. Glassell, 216 La. 828, 44 So.2d 882, decided by this court in 1950. This decision overrules that case without mentioning it. The defendant discusses the case in his brief, but does not urge or even suggest that the court should overrule it. The court makes no explanation whatever as to why it has changed its views as to the nature of the obligation or, for that matter, does not explain the basis for its conclusion that the obligation is a personal one. The wisdom of what we said in Roberson v. Pioneer Gas Co., supra, has been recognized several times by this court, and is peculiarly applicable here: "* * * The decisions of the highest court of a state, on the subject of oil and gas leases, or mineral rights, establish rules of property; and they should not be reversed, even though a contrary rule might be deemed more logical, unless it be by an act of the Legislature. * * *"
In Wier v. Glassell, supra, the litigants were a sublessor and his sublessee. Wier had transferred several leases to Glassell, reserving an overriding 1/16th royalty. Before the leases expired Glassell obtained new leases, and after the leases expired oil was produced under the new leases. Wier had not exacted the covenant that Mirandona and Chauvin placed in their transfer, but he nevertheless contended that his royalty applied to the new leases because (1) the language of the instruments of transfer as a whole showed such intent, (2) the contracts were entered into in the light of the custom and practice of the oil business, under which it was recognized that an assignor retains the ownership of the reserved royalty in the property affected not only under the lease assigned but under any subsequent lease of the property taken by the assignee, and (3) there was a fiduciary relationship. The court found that the language of the instruments did not sustain the first contention and disposed of the second contention as follows [216 La. 828, 44 So.2d 888]: "The view we take of the language and meaning of the agreements themselves under which plaintiff assigned the lease and of their nature, makes it easy for us to dispose of plaintiff's contention regarding the custom, usage and practice that prevails in the oil business, in the light of which he alleges that he and the defendant entered into these contracts. * * * the royalty interests which plaintiff is seeking to have himself recognized as the owner of, being an incorporeal immovable, and being in writing, all as heretofore pointed out, it is clear that parol evidence would not be admissible to show that the parties intended to contract with reference to future leases as well as the leases that were being assigned, nor, indeed, with regard to any other intention than the one expressed in the contracts of assignment themselves. To permit parol evidence of the nature such as plaintiff *450 would want to elicit under the allegations of his petition would be to permit him to prove title to an incorporeal immovable by parol and this he could not do in view of the specific provisions of Articles 2275 and 2276 of the Civil Code." (Italics mine.) If a covenant with reference to future leases is only a personal obligation, the court was wrong in that case, and the plaintiff there should have been permitted to establish by parol that the parties intended to contract with reference to future leases.
I am of the opinion that we were correct in the Wier v. Glassell case, and that decision that an overriding royalty interest is an incorporeal immovable is in accord with the view in other jurisdictions. Emerson v. Little Six Oil Co., 5 Cir., 3 F.2d 265; Phillips Petroleum Co. v. Taylor, 5 Cir., 116 F.2d 994; Phillips v. Bruce, 41 Cal.App.2d 404, 106 P.2d 922; La Laguna Ranch Co. v. Dodge, 18 Cal.2d 132, 114 P.2d 351, 135 A.L.R. 5463; see Thornton, Oil and Gas (5th ed.), sec. 364, p. 646; Levy, Oil Royalties, A Distinct Species of Property, 11 So.Cal.L.Rev. 319, 327.
The holding in this case that the royalty obligation as it applied to future leases was a personal one only is also contrary to the legislative enactments on the subject. In 1938 the Legislature provided: "Oil, gas and other mineral leases, and contracts applying to and affecting such leases or the right to reduce oil, gas or other minerals to possession, together with the rights, privileges and obligations resulting or flowing therefrom, are hereby defined and classified as real rights and incorporeal immovable property, and may be asserted, protected and defended in the same manner as may be the ownership or possession of other immovable property by the holder of such rights, without the concurrence, joinder or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land." Act 205 of 1938, R.S. 9:1105. The Legislature by this act evidenced an intent to classify all lease and mineral rights and the contracts affecting them as real rights and incorporeal immovable property. The act was regarded as authority for rejecting parol evidence to prove a contract to purchase oil and gas leases in Davidson v. Midstates Oil Corporation, 1947, 211 La. 882, 31 So.2d 7, and for the conclusion in Wier v. Glassell, supra, that assignments and subleases of mineral leases are contracts relating to an incorporeal immovable, "the transfer of which, under Article 2275 of the Civil Code, `must be in writing'".
The Wier v. Glassell case was decided on February 13, 1950, and on June 30, 1950, the court rendered its decision on rehearing in the case of Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369, in which it held in a four-to-three opinion that a lessee has no substantive real right under Act 205 of 1938 that will permit him to acquire by reliance upon the public records a greater right than his lessor possesses, and that therefore a lessee is bound by prior unrecorded equities. The court specifically held that the 1938 act was remedial and procedural in character, and had made no substantive changes. To overcome the effect of this decision the Legislature passed Acts 6 and 7 of the Second Extra Session of 1950, R.S. 9:1105, 2721. See Nabors, The Louisiana Mineral Servitude and Royalty Doctrines: A Report to the Mineral Law Committee of the Louisiana Law Institute, 26 Tulane L.Rev. 303. R.S. 9:1105 shows that it was intended among other things to set at rest forever any question as to the nature of mineral leases and contracts applying to and affecting them, and the decision in the instant case is in direct conflict with that statute. It specifically provides that it should be substantive as well as procedural, and reads as follows: "Oil, gas, and other mineral leases, and contracts applying to and affecting these leases or the right to reduce oil, gas, or other minerals to possession, together with the rights, privileges, and obligations resulting therefrom, are classified as real rights and incorporeal immovable property. They may be asserted, protected, and defended in the same manner as may be the ownership or possession of other immovable property by the holder of these rights, without the concurrence, *451 joinder, or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land. The Section shall be considered as substantive as well as procedural so that the owners of oil, gas and other mineral leases and contracts within the purpose of this Section shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate." Act 7, R.S. 9:2721, is an act relating to the recording laws designed to prevent secret claims or equities and other matters outside the public records from being binding on third parties.
Whether the royalty covenant in this case reserving an overriding royalty is considered as a contract applying to and affecting a mineral lease or as a part of the lessee's interest carved out of the lease, it would be an incorporeal immovable under R.S. 9:1105 in either case. This classification would apply to the overriding royalty under the Crowder lease and under future leases. The majority opinion leaves in complete doubt the nature of the overriding royalty as limited to the Crowder lease. It does not say that it is a real obligation, nor does it say that it is a personal obligation. The court does recognize, however, that this royalty would be "enforceable as against all assignees and sublessees alike so long as that lease was in esse". Omitting completely any distinction as to the nature of the two royalty covenants as the basis for this conclusion in regard to the production under the Crowder lease, it says that as limited to the Crowder lease the royalty would have been binding on all subsequent holders of the lease because "the interest they had reserved had been placed of record in the Parish where the land was situated". This logic, or the lack of it, is not persuasive, and the technique employed is obviously one to avoid explaining why the royalty as applied to the Crowder lease was a real obligation but as applied to future leases it was a personal one onlyan explanation which the court, in my opinion, could not make.
If recordation in the parish where the land is situated is what makes a reservation binding on all sublessees, the reservation as applied to future leases was also recorded in this case. It is not the recording, of course, that made the reservation the kind that would be binding on sublessees, but, if it was the kinda real obligation and a contract affecting immovable property, it had to be recorded to be effective against third parties under Article 2266 of the Civil Code. If it was not a contract affecting immovable property, recordation could not make it binding as a personal obligation on third persons.
The majority opinion serves to confuse the whole field of royalty obligations. If the royalty as applied to future leases was not binding on the sublessee Brown, the royalty as applied to the Crowder lease likewise would not have been binding on him because there is no difference as to the nature of the obligationsthe majority opinion has not even attempted to differentiate the two.
NOTES
[1] The judgment of court excepted from its effect 25 acres surrounding the Doussan No. 3 well, which was in conformity with the provisions of the lease. Subsequently, on September 20th 1948, Mirandona and Chauvin executed a release of their remaining interest in the lease in favor of Doussan. For purposes of this decision, we do not regard either the exception in the judgment of cancellation or the subsequent release to be an issue of importance.
[2] The contractual provision is that the restricted period is for one year from the "expiration" of the first lease. Brown maintains on this rehearing that the original lease had expired by its own terms more than a year before he made a lease with Doussan Co. Because of the conclusion we have reached, it is not essential for us to consider this issue.